**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ACCUSEARCH TECHNOLOGIES LLC, | |
| Plaintiff, | |
| v. | Civil Action No. _____ |
| GOOGLE LLC, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff AccuSearch Technologies LLC ("AccuSearch") files this Complaint against Google LLC (hereinafter collectively "Google" or "Defendant") for infringement of United States Patent Nos. 10,585,959 (the "'959 patent"); 10,867,001 (the "'001 patent"); 11,100,184 (the "'184 patent"); and U.S. Patent No. 11,971,937 (the "'937 patent") (collectively, the "Asserted Patents"), attached here as Exhibits 1-4.

**NATURE OF THE ACTION**

1.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

**THE PARTIES**

2.     AccuSearch is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 200 Continental Drive, Suite 401, Newark, DE 19713.

3.     On information and belief, defendant Google is a limited liability company organized, existing, and registered to do business under the laws of Delaware. Delaware corporate records indicate that Google is domiciled in Delaware.

4.    Google LLC may be served with process through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808, or anywhere it may be found.

5.    On information and belief, Google has been authorized to transact business in the State of Delaware and the District of Delaware since on or about October 22, 2002, under Delaware File Number 3582691.

6.    On information and belief, Defendant sells and offers to sell products and services throughout Delaware, including in this judicial district, as well as throughout the United States, and introduces products and services that perform infringing processes into the stream of commerce knowing that they would be used, offered for sale, or sold in this judicial district and elsewhere in the United States.

7.    On information and belief, Google has made, used, offered to sell, offered to sell access to, sold, and/or sold access to products and services, including: (1) a webpage or other interactive graphical user interface to provide internet search results for display on a computing device, including at www.google.com; (2) Google's Chrome Browser or any other browser or functionality that Google and/or users put into service or direct or control; (3) current or legacy products or services, which use, or have used, one or more of the foregoing products and services as a component product or component service; (4) combinations of products and/or services comprising, in whole or in part, two or more of the foregoing products and services; and (5) all other current or legacy products and services imported, made, used, sold, or offered for sale by Google that operate, or have operated in a substantially similar manner as the above-listed products and services. As used herein, one or more of the foregoing products and services are individually and collectively referred to as the "Google Search Engine Products and Services."

8.     On information and belief, Google, as well as the hardware and software components comprising the Google Search Engine Products and Services and/or that enable the Google Search Engine Products and Services to operate, including, but not limited to, browsers, mobile phones, tablets, servers, server software, webserver software, webserver hardware, website client software, mobile computing device client application software, networked communications hardware, network routers, network switches, network hubs, back-end hardware, backend software, cloud-based software, cloud-based hardware, and other hardware and software computing systems and components ("Google Search Engine Functionality") infringes (literally and/or under the doctrine of equivalents) at least one claim of each of the Asserted Patents.

## JURISDICTION AND VENUE

9.     This civil action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 et seq. Accordingly, this Court has subject matter jurisdiction under at least 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has general and specific personal jurisdiction over Google because it (i) is incorporated in the State of Delaware and this judicial district; (ii) has purposefully availed itself of the rights and benefits of the laws of the State of Delaware and this judicial district; and (iii) regularly conducts and solicits business, or otherwise engages in other persistent courses of conduct, in this judicial district, and/or derives substantial revenue from the use, sale, and distribution of goods and services, including but not limited to the Google Search Engine Products and Services provided to individuals and businesses in the District of Delaware. Google has committed and continues to commit acts of infringement within this district and, thereby, giving rise to this action and establishing minimum contacts with this forum such that the

exercise of jurisdiction over Google would not offend traditional notion of fair play and substantial justice.

11.    Venue is proper in this Court under 28 U.S.C. § § 1391 and 1400(b). Google resides in this District. Google has chosen to incorporate in the State of Delaware, thereby receiving the benefits offered to Delaware companies. Google must accordingly assume responsibilities to Delaware and its citizens.

12.    On information and belief, Google has previously submitted to the jurisdiction of this Court within the last five years.

13.    On information and belief, Google is a company with global reach and annual revenue in the billions of dollars. Google accordingly cannot reasonably claim it would be inconvenient to litigate in the forum in which it is incorporated and admits it is domiciled.

14.    Google is internationally present. *See* https://about.google/intl/ALL_us/locations.

15.    At Google, working at one office location is indistinguishable from the next in terms of access to electronic information and systems. https://blog.google/inside-google/life-at-google/hybrid-approach-work.

16.    Google has a substantial presence on the East Coast of the United States. *Id.* For example, according to publicly-available information, Google made a $1.2 billion "initial" investment in Virginia in 2019. https://www.google.com/about/datacenters/locations/loudoun-county.

17.    "Google's hybrid model underscores that employee productivity is not confined to a traditional office setting." https://blog.google/inside-google/life-at-google/hybrid-approach-work/; https://services.google.com/fh/files/blogs/distributedworkplaybooks.pdf; https://esevel.com/blog/google-remote-work-policy.

18.     Google promotes job positions that are "Remote eligible."
https://www.google.com/about/careers/applications/jobs/results?has_remote=true&location=United+States. Many of those openings are on the East Coast, including in Delaware.

19.     On April 28, 2025, Google had at least 88 job openings for the Washington D.C. area.
https://www.google.com/about/careers/applications/jobs/results?location=Washington+D.C.%2C+DC%2C+USA.

20.     On April 28, 2025, Google had at least 8 job openings in Delaware.
https://www.google.com/about/careers/applications/jobs/results?location=Delaware%2C+USA.

21.     On April 28, 2025, Google had at least 23 job openings in Pennsylvania.
https://www.google.com/about/careers/applications/jobs/results?location=Pennsylvania%2C+USA.

22.     On April 28, 2025, Google had at least 12 job openings in New Jersey.
https://www.google.com/about/careers/applications/jobs/results?location=New+Jersey%2C+USA.

23.     On April 28, 2025, Google had at least 8 job openings in West Virginia.
https://www.google.com/about/careers/applications/jobs/results?location=West+Virginia%2C+USA.

24.     Indeed, Google has a "playbook" for how to work in a "Distributed" environment. https://services.google.com/fh/files/blogs/distributedworkplaybooks.pdf.

25.     At Google: "Hybrid work model with remote work opportunities also available." https://gweb-careers-cjd.appspot.com/benefits/.

26.     At Google: "Four 'work from anywhere' weeks per year" are available. *Id.*

27.    Even before the pandemic, Google employed at least 10,000 people distributed across 150 cities. https://www.inc.com/betsy-mikel/google-asked-5600-of-its-employees-about-their-work-tight-knit-productive-teams-did-3-things-differently.html.

28.    Veronica Gilrane (then Manager of Google's People Innovation Lab) surveyed 5,600 Google employees and conducted focus groups with about 100. *Id*. She learned that "[t]wo in five Google teams include employees working from different locations." *Id*.

29.    Google promotes job positions with the allowance for applicants for such positions to select from multiple possible locations in connection with a single job position.

30.    The locations provided for single job position postings are sometimes more than 2,000 miles apart, and, at times, span more than one country.

31.    "Google helps Delaware businesses move toward their goals," by providing free tools to support growth. https://economicimpact.google/state/de/.

32.    "In 2023, Google helped provide $10.5 billion of economic activity for thousands of Delaware businesses, nonprofits, publishers, creators, and developers." *Id*.

33.    "More than 59,000 Delaware businesses used Google's free tools to receive phone calls, bookings, reviews, requests for directions, or other direct connections to their customers." *Id.*

34.    "In 2023, Google.org provided $4.51 million in donated search ads to Delaware nonprofits through the Google Ad Grants program." *Id.*

35.    Google conducts workshops in Delaware to coach its customers on the use of its products. https://events.withgoogle.com/join-google-in-delaware.

36.    Thus, Google maintains employees within this judicial district, actively participates in Delaware's business community, and its actions affect Delaware's citizens.

37. Google's business and actions "affect[]" consumers throughout the state of Delaware. *See, e.g.,* https://news.delaware.gov/2023/12/19/attorney-general-jennings-announces-700-million-settlement-with-google-over-play-store-misconduct/. Along with 52 other states and territories, "Delaware fought hard to secure substantial monetary damages and real changes in Google's business practices [with respect to Google Play] that will help restore a more open and competitive marketplace." *Id.*

38. In a separate earlier litigation, Delaware was one of 40 states to reach a settlement with Google over its location tracking practices. https://www.wmdt.com/2022/11/delaware-to-get-4-3-million-from-historic-settlement-with-google/. That settlement helped protect the personal data of Delaware's citizens from Big Tech and ensure Delawareans are able to make informed decisions regarding their highly sensitive information. *See, e.g., id.*

Google Search Engine Products and Services.

39. Google's Internet search results page (at www.google.com) is a graphical user interface (or "GUI"). *See, e.g.,* U.S. Patent Nos. 10,353,950 and 11,836,177 to Google.

40. Google stated as follows:

The Google Search results page contains a set of different types of search result visual elements, and each search result has its own set of possible child visual elements. For example, a text result is a visual element in its own right, and it has various child visual elements, such as attribution, title link, and snippet.

How the visual elements look can change over time, and a given result can be displayed differently depending on whether you're using a desktop computer or a phone, what country you're in, the language of your search query, and many other factors.

*See* https://developers.google.com/search/docs/appearance/visual-elements-gallery.

## THE ASSERTED PATENTS

41. The Asserted Patents issued from applications that are related in a line of continuation applications. The '184 Patent is a continuation of the '001 Patent. The '001 Patent is

a continuation of the '959 patent. And the '937 Patent is a later continuation in the same patent family. Thus, the specifications of each Asserted Patent are substantively identical. And, for ease of reference, the citations in the general allegations of the Complaint (*i.e.*, those referencing all the Asserted Patents) are to the '959 patent. The same information is also contained in each of the '001, '184, and '937 patents.

42.     To the extent required, AccuSearch has, at all times, complied with all marking requirements under 35 U.S.C. § 287.

43.     Each of the Asserted Patents name Mr. Robert Osann, Jr. as the sole inventor.

44.     Over the last about 50 years, Mr. Osann has been a prolific inventor and problem solver. His inventions focus on providing electronic systems improvements to assist users by decreasing frustrations while also saving time and money.

45.     Mr. Osann also works to develop ways to use technology to help others.

46.     Mr. Osann has been a founder, co-founder, or major contributor to over 15 different startup companies. Many of his companies were focused on improving cellular communication, Internet functionality, wireless networking, smart buildings, traffic safety, and configurable semiconductors. Others sought to utilize electronic systems to address preventable harm. For example, to address mass shootings at schools, Mr. Osann developed an entry portal for public locations that blocks entrance by anyone carrying a weapon. He also designed a cellphone to assist first-responders with locating victims of earthquakes or other natural disasters that are trapped in rubble.

47.     Each of the Asserted Patents is directed to multiple improvements to Internet search technology existing as of the earliest priority date of the Asserted Patents (on or before June 16, 2011) ("Priority Date"), when Internet search pages frequently presented results that did not offer the information the user sought. *See e.g.*, '959 patent, 1:40-52. Such prior art systems

and methods contained URL links to webpages containing irrelevant information or that did not contain the specified search terms. *Id.* at 2:13-16. But in such prior art systems, users were not able to know that the presented results did not contain specific search term elements unless they clicked on the URL links and visited the webpages, often causing waste of time.

48.    Each of the Asserted Patents is directed to technological improvements to Internet search webpages and GUIs, where additional information characterizes search result URLs. *Id.* at 2:52-57.

49.    Each of the Asserted Patents describes technological improvements, as exemplified in Figure 2.



**Figure 2**

*Id.* at Fig. 2.

FIG. 2 shows an overview of possible and exemplary architectural implementations for a system 200 according to the present invention with emphasis on where different software functionalities may reside and operate. The user interface for a search engine appears to the user in a browser window 201 running on a PC 202. PC 202 may be any form of personal computing device including for example a desktop, laptop, notebook computer, smart phone, tablet computer, etc. According to the present invention webpages located at search results URL links are analyzed to determine their specific characteristics. This analysis is performed by an analysis engine which may occur on the user's PC as analysis engine 203. The analysis engine may also operate on a specific server website 204 as analysis engine 205. Alternately the analysis engine may operate on one or more compute[r] servers located in "the Cloud" 206 and occur as one or more of analysis engine instances 207. Yet another implementation has the webpage analysis engine co-resident with a webpage annotation engine as element 208 operating on a search engine website 209 in the circumstance where analysis annotation and/or filtering according to the present invention are performed by the search engine provider themselves. For configurations where the webpage analysis engine is located on the user's computing device 202, a server specific website 204, or in the cloud 206, the annotation engine 211 will typically reside on the user's computing device 202. **These examples are exemplary and non-limiting, and it is possible to construct a system where analysis, annotation, and filtering engines reside on any of the various computer locations shown in FIG. 2.**

*Id.* at 5:7-36 (emphasis added).

50.     Each of the Asserted Patents addressed technological problems associated with conventional Internet keyword search interfaces, which regularly provided stale, irrelevant, overinclusive, or incomplete results. *See, e.g., id.* at 3:63-65. By deploying any one or more of the improvements discussed below, each of the Asserted Patents overcame the limitations of conventional Internet search webpage GUIs, especially those directed to receiving keyword search inquiries from users.

### Solutions to Problems Associated with Prior Art Technology

51.     As of the Priority Date, conventional Internet search technology, including Internet search webpage GUIs, were deficient in at least four respects.

### *1. Identifying Irrelevant Results*

52.     Conventional Internet search webpage GUIs did not present an effective means of warning a user against visiting irrelevant websites. *See, e.g., id.* 1:53-2:7.

53.     As a result, users often could not identify irrelevant websites without visiting them. They could not do so, for example, based solely on the abstract portions that were included in search results. *See, e.g., id.* 11:4-15.

54.     Users also had no way of knowing whether or not a search result contained a certain search term. That made the search functionality inefficient.

### *2. Separating Out Irrelevant Results*

55.     Conventional Internet search webpage GUIs, and related search functionality, were unable to effectively identify relevant Internet search results and separate out irrelevant ones. That problem carried over to how results were presented to users. The problem arose because conventional Internet search GUIs at the time did not provide any warning to the user that a given search result was missing a certain search term element. Users often deemed such missing terms important and would have expected them to be included in the results. That shortcoming caused users to waste time reviewing irrelevant results and use increased resources, due to the need to perform an increased number of searches to obtain relevant information. It made the search functionality significantly less efficient.

56.     "At the time of the present invention, it [wa]s frequent that a user of Web browsers and search engines click[ed] on a link in the search engine results only to find themselves on a website that offer[ed] none of the information they were searching for." *Id*. at 1:40-45. "Instead, they often f[ound] webpages that simply waste[d] their time." *Id.* at 1:44-45.

57.     As of the Priority Date, "[o]ther categories of website/webpage [we]re found in search results that [we]re irrelevant or of little inherent use with regard to what the user s[ought] and also effectively waste[d] the user's time." *Id.* at 1:49-52.

58.     As of the Priority Date, "[m]any times some but not all of the search term elements w[ould] appear in a webpage located at a URL provided by the search results. Sometimes none of the search term elements [would] appear on such a webpage." *Id.* at 9:21-24; *see also id.* at 12:5-9. There would be no warning to the user that the terms were missing.

59.     These shortcomings appeared to be by design, placing profits over user experience. "While search engine providers [as of the Priority Date] claim[ed] to focus on providing 'relevant' results, the reality seem[ed] to be that their primary mission [wa]s to make money-typically through advertising and linking-based referral services." *Id.* at 2:8-11; *see also id.* 1:45-47.

### 3. Over-Inclusivity

60.     Conventional Internet search webpages were designed to return over-inclusive results when applying user Internet search terms (or queries). For example, they often returned URLs that responded to Internet search terms in a way a user would not have intended.

61.     Over-inclusivity offers a wider variety of keywords in referenced webpages and therefore more opportunities to trigger ads that target those keywords, thereby increasing ad revenue.

62.     Thus, there was a problem in that Internet search engine users searching the Internet could not actively control or limit overinclusive results. Nor could such users discern which Internet search results were returned without being sufficiently related to search criteria entered by the user (*e.g.*, keywords).

63.     One characterization of the problem, as of the Priority Date, follows:

The basic format for specifying a search with any search engine includes an implied AND-function of the specified search term elements. As such, one would expect that each webpage corresponding to a search result URL link contains all the specified search term elements. Unfortunately today, **it is frequent that many of the search term elements will be missing from the results webpage and in some cases all will be missing**. Sometimes a subset of search term elements will be contained in a webpage located at a search result URL link while other specified search term elements are located in descendent webpages of the webpage located at the search result URL link. Thus, the descendent webpage may still at times be useful to the user. There is a reason a user specifies the initial set of search term elements. They expect results where each listed webpage contains all the elements. Knowing in advance which webpages contain which search term elements would be useful to aid the user in minimizing lost time and frustration.

*Id*. at 2:9-34 (emphasis added).

### 4. Unnecessary Traffic and Bandwidth Use

64.     As of the Priority Date, bandwidth was unnecessarily consumed, and computer processing resources, including client and server computer processing resources, unnecessarily increased, by Internet search engine users having to visit irrelevant websites—as opposed to being directed more efficiently to desired websites. The computational resources required for repeated back-and-forth between user's browsers and external webpages consume bandwidth and increased the traffic to be managed by servers.

65.     The Asserted Patents solved each of these problems by improving the precision, accuracy, and efficiency of search results and improving the GUIs users used to input searches (usually in keyword form).

It would be advantageous if additional information appeared on a browser search results webpage such as that shown in FIG. 1 where this additional information provides insight to the user on what is contained in the webpage located at each search result URL such as URLs 108 and 109. This foreknowledge of the contents of these webpages could prevent the user from wasting their time reviewing pages that are not relevant to their search. It would also be advantageous if the user could optionally cause results webpage links that fall into undesirable or relevant categories (from their perspective and/or relative to their current search) to be deleted from their search results in order to focus their search more completely on irrelevant webpages. Such enhancements to the search process save users valuable time and avoid frustration-making the user experience more positive from both an

emotional and productivity standpoint-especially for those users who perform web browsing and searching for a substantial part of their everyday job.

*Id*. at 2:52-3:3.

## <u>Specific Improvements to Internet Search Technology</u>

66.     At least three aspects of the Asserted Patents constituted novel, inventive, and specific implementations that improved relevant technology as of the Priority Date.

### *1. Annotations*

67.     Each of the Asserted Patents discloses and claims inventions that annotate results to show when some, or all, of the search terms entered by a user are <u>missing</u> from the webpage located at a URL returned by the Internet search and presented on the search results page. *See, e.g., id.* at 9:25-55. One embodiment involves determining the presence of search term elements in a webpage located at a search result URL. *Id.* 6:6-11.

68.     The specification explains that "webpages frequently change and the most accurate categorization will always be that performed at the time of the user's search." *Id.* at 3:63-65.

69.     The Asserted Patents utilize the user's search terms to provide annotations. That approach is quick, efficient, and flexibly deployable. The traversal can be done consequent with the search or separately from the search; it can be accomplished on any networked server. *See, e.g., id.* 5:34-36 ("it is possible to construct a system where analysis, annotation, and filtering engines reside on any of the various computer locations shown in FIG. 2.") The speed, efficiency, and flexibility allow search functionality to better adapt to changing information on the Internet.

70.     The content extracted from webpages can be easily compared to the user's query elements—in real-time, as an option. Regardless of what method is used to determine missing

search terms on the webpages included in search results, by integrating those results into the user's GUI through annotations and/or filtering, the Asserted Patents deliver an interactive, technology-driven solution that optimizes the efficiency, relevancy, and immediacy of search results. Such capabilities extend far beyond the scope of merely labeling data in the abstract. They avoid considerable wasted time, energy, and resources of the search system and connected terminals, which also benefits the user by greatly speeding up the search process.

71.    The Asserted Patents disclose and claim an improved GUI that annotates search results for display to the user, including to identify which, if any, precise search terms users themselves input are missing from the search results.

72.    The specification of the Asserted Patents provides concrete and specific technology-specific guidance on the implementation of the claimed invention that improves the way that Internet search engines operate.

73.    In an optional embodiment, the specification provides an algorithm that includes "automatically visit[ing] each descendent webpage of each search results URL and analyz[ing] the descendent webpage to determine what search term elements, if any, are present in the descendent webpage."



*See e.g., id.* at Fig. 9. *See also id.* at 9:35-39 ("The presence of search term elements in a descendent webpage can be especially useful to a user when less than all the specified search term elements appear in a webpage whose URL appears in the search term results.").

74.     The ability to annotate search results on the user's GUI, including with respect to the presence or absence of search terms located in descendent webpages, is a specific and non-abstract technical solution to a problem that is technologically tethered to the field of Internet searching.

### 2. The Flexibility of Assessing Search Results

75.     The options to analyze webpages, descendent webpages, or other content obtained from those webpages, at any time is made possible by the quick, efficient, and flexibly deployable approach of the Asserted Patents. That is, by focusing on the <u>user's</u> search terms.

76.     The process of determining whether or not user search terms are present in one or more sets of webpage data (*e.g.*, analyzing website data to make a determination as to whether or

not a few search terms are present or not) is a quick, efficient, and flexibly deployable process.

Thus, that analysis can be conducted in real-time as an option.

77.     For example, one or more embodiments of the Asserted Patents provided the

ability to present information on a GUI based upon a real-time assessment of webpages:

> According to the present invention the preferred implementation for analysis of a webpage located at a search results URL has that analysis occurring at the time of a user's search request, since only then will the characterization of the webpage truly represent what is contained on that webpage at that moment in time.

*Id.* at 55:60.

78.     In sum, the flexibility provided by the Asserted Patents alone improved search

functionality and GUIs by providing information that was less out-of-date than conventional

Internet search functionality as of the Priority Date.

### *3. Filtering*

79.     Each of the Asserted Patents discloses and claims specific improvements to then-

existing GUIs. For example, they disclose GUIs that allow a user to filter Internet search results

in an unconventional and inventive manner.

80.      Each of the Asserted Patents "offers users the opportunity to annotate and/or filter

their search results to delineate and/or remove references to sites that offer unwanted or

irrelevant categories of information and as a result provide the user with a set of search results

that offer and/or emphasize information of substance on their search topic." *Id*. at 3:7-12.

81.     As of the Priority Date, conventional Internet search engine functionality,

including GUIs, provided a static list of links (URLs). Users had to click through each link to

determine whether the underlying webpages included the terms of interest.

82.     The Asserted Patents disclose and claim GUIs that not only flag Internet search

results that lack one or more user-supplied terms but also remove such results upon user selection

of a filter. *Id.* at 6:26-30, Fig. 11. That dynamic filtering, integrated into the GUI itself, fundamentally altered how users navigated search results. It eliminated—or at least reduced— needless clicks, load times, bandwidth, and computer processing resources.

### 4. Synergistic Benefits of Multiple Unconventional Approaches

83.    Each of the aforementioned concepts (in paragraphs 67-82) are inventive on their own.

84.    Combined, they were—and are—synergistic. Together they substantially exceeded technology that was conventional as of the Priority Date.

85.    For example, the missing-term annotations present a user with a particular filtering option. That option is dynamic and adaptive; it responds and adapts based upon user input (*e.g.*, keywords in Internet searches) as well as the specific results returned by the searches (whether one or more webpages are missing terms or not).

> Alternately <u>or in combination with</u> this <u>annotation functionality</u>, certain search results may be filtered or deleted from the search results webpage such that the user never sees them and is therefore never distracted by them.

*Id.* at 6:26-30 (emphasis added);



*See id.* at FIG. 11 (excerpted).

86.    The inventive annotation and filtering functionalities—especially when used together—also decrease client and server processing load and bandwidth use. These functionalities manage the flow of Internet search data more selectively and efficiently. As a result, not only does the user experience fewer wasted clicks and faster insight into the nature of search results, but the entire search ecosystem—from user device to remote server—benefits from streamlined operations that prior art systems could not achieve.

### 5. Multi-Device Use

87.     The Asserted Patents also provide a solution to a technical problem unique to smartphones, tablets, and other devices with smaller displays or limited user input devices.

88.     Many users perform searches on smartphones. For example, as much as over 50% of Google search business flows through Apple devices alone (https://www.seroundtable.com/google-apple-business-search-34933.html).

89.     Many devices (*e.g.*, tablets and smartphones) are limited by smaller displays and limited user input devices. Thus, it is more important that users be able to separate out irrelevant search results. The Asserted Patents disclose and claim annotations and filtering that improve those particular GUIs. They allow users to make better use of the smaller display areas. For example, the GUIs disclosed and claimed in the Asserted Patents allow users to filter out irrelevant information. That clears the display of irrelevant information and leaves only desired information remaining.

90.     The inventions of the Asserted Patents become increasingly useful as device displays become smaller.

91.     The Asserted Patents disclose and claim improved GUIs that allow users to make use of such smaller displays. The inventions speed up the user's operation of the associated communication devices.

92.     For example, one or more claims expressly recite these benefits. '184 patent, claims 4, 9, 12, 14, 22; '959 patent, claims 6, 8, 10, 20, 22, 24, 34, 36.

### Unconventional

93.     Moreover, the claimed annotated search results and filtering features are not incidental.

94.     None of the specific implementations described in paragraphs 67-92, as recited in any individual claim, was well-understood, routine, or conventional.

95.     Neither was any ordered combination of any one or more of those implementations (described in paragraphs 67-92), as recited in any individual claim, well-understood, routine, or conventional.

96.     The specification of each Asserted Patent discloses and claims at least one embodiment that demonstrates the ordered combination of elements and how an ordered combination of elements created a concrete application of a GUI. *Compare* FIG. 1 (prior art) *with,* Fig 5 (one embodiment):



*See Id.* FIG. 1; *Id.* FIG. 5 (annotated); *see also id.* 10:29-23.

97.     Each of the Asserted Patents discloses and claims improvements to Internet search functionality and the manner in which search results are presented to a user on a GUI.

98.     One or more inventions of each of the Asserted Patents annotates the results to indicate that a referenced webpage is missing certain search terms input by the user.

99.     One or more embodiments of each of the Asserted Patents provides a means for users to filter results using the annotations themselves.

100.    One or more of the inventions disclosed and claimed in each of the Asserted Patents are specific. They are each, in some manner, tied to solving Internet-centric problems with a specific Internet search webpage GUI. They improve the GUIs and Internet search technology.

101.    The improved GUIs disclosed and claimed in the Asserted Patents also save the user's time by facilitating a more efficient and adaptable search function.

102.    Indeed, each of the Asserted Patents relies upon, or otherwise integrates with, Internet search functionality (*e.g.*, Internet search webpage GUIs and underlying search engines).

103.    One or more of the inventions disclosed and claimed in the Asserted Patents constitute specific, practical solutions to problems unique to the Internet search webpages, Internet search data, and Internet search engines. More particularly, they are unique to the technological problem of returning and presenting results of an Internet search on an Internet search webpage GUI. As discussed above, the problems lie in the fact that conventional Internet search pages returned irrelevant results.

104.    The specific and practical solutions of the Asserted Patents yield tangible technical benefits. For example, they reduce both user bandwidth consumption (by eliminating the need to visit irrelevant or out-of-date websites) and the computational resources required for repeated back-and-forth between the user's browser and external webpages. The inventive real-time annotation and filtering processes also decrease server load by managing the flow of data more selectively and efficiently. As a result, not only does the user experience fewer wasted clicks and faster insight into the nature of search results, but the entire search ecosystem—from user device to remote server—benefits from streamlined operations that prior art systems could not achieve.

105.    The Asserted Patents directly defied convention. For example, it was not conventional to tie annotated search results to filtering technology—much less annotations displayed on a webpage GUI to indicate which search terms provided by a user are "missing."

106.    The Asserted Patents each recite claim limitations that alone are inventive, including, for example, by requiring a specific type of annotation to be used in connection with search result groups on an Internet search webpage GUI. Another example includes the claimed requirement of filters that are tied to those specific annotations. Those filters result in removing specific webpages from the Internet search webpage GUI: those that are missing one or more of the user's search terms. Neither of these claim elements was conventional at the time of the Asserted Patents' inventions.

107.    The Asserted Patents solved Internet-centric problems discussed above (*e.g.*, those that caused or contributed to over-inclusivity, irrelevant results, and unnecessary network traffic). They disclose GUIs to present results differently than conventional methods. They provide for the presentation of specific annotations of missing-terms in near proximity to search results. They also enable a user to use a simple mechanism on a GUI to filter internet search results based upon the missing terms.

108.    By embedding these quick, efficient, and flexibly deployable analysis functionality, annotation, and filtering processes within the existing web browser framework, the claims of the Asserted Patents are rooted in a specific type of computer technology: user interfaces and related technology to use keywords to search the Internet. That includes tangible GUIs with which users interact. One example, again, is depicted in FIG. 5:



*Id.* FIG. 5 (annotated); *see also id.* 10:29-23.

109.    In sum, the specification of each Asserted Patent describes several technical advancements over prior art Internet search engines and their GUIs, particularly focused on improving user experience by enhancing Internet search results, including but not limited to with respect to (1) determining whether an Internet search result is missing a particular search term and, if so, providing an annotation indicating that the search term is missing; (2) filtering of Internet search results based on the presence or absence of search terms; (3) identification of linked descendant pages returned by Internet searches for the presence or absence of search terms; (4) categorization of webpages returned by Internet searches for enhanced relevance analysis; (5) flexibility to analyze search information (in databases or on webpages) quickly and efficiently; (6) improved Internet search engine GUIs, including to solve problems associated with devices that have smaller screens or limited input devices (*e.g.*, having smaller screens and keyboards or lacking a mouse, stylus, or other input device); (8) novel techniques for prioritizing digital Internet search engine results over the results provided by conventional Internet search methods; (9) specific techniques for using search terms entered by a user to reduce problems

related to conventional Internet search engines; and thereby providing a specific solution to multiple Internet-centric problems. These improvements individually and collectively indicate that the Asserted Patents improved not just the data returned by Internet search engines but also the interface and methodology by which Internet search engines and their GUIs operated.

110.    The claims of the Asserted Patents, including the asserted claims, recite these improvements in whole or in part. None of the claims of any Asserted Patent merely applies generic computer processes to an abstract idea.

111.    None of the claims of any Asserted Patent use computers merely as a tool.

### **Bucking Convention, Solving a Known Problem, and Gaining Popularity**

112.    Prior to December 2013, certain users or individuals complained about search results on www.google.com not including key search term elements.

113.    Certain examples were made public. *See, e.g.,* http://www.rba.co.uk/wordpress/2011/11/08/dear-google-stop-messing-with-my-search/ (Nov. 8, 2011).

114.    Missing search term annotation has been popular with and appreciated by the Internet search engine user base since at least December 2012.

115.    Google was one of—if not the—first search engines to include missing term annotations such as the following or something similar:

Missing: ~~traffie~~ | Must include: **traffic**

116.    Specifically, Google previewed search result annotations showing strikethrough on missing search terms in or around December 2012. *See, e.g.,* https://www.seroundtable.com/google-similar-crossed-16073.html (Dec. 12, 2012) (Annotations on search results showing strikethrough text on missing search terms).

117.    Google deployed "Missing:" annotations in or around December 2013. *See, e.g.,* https://aaronrobb.ca/google-showing-missing-keywords-serps/.

118.    Other search engines followed suit after Google.

119.    One example was Microsoft's Bing search engine. It deployed a similar function by at least in or around the year 2020.

120.    The popularity demonstrates the utility and commercial success of the patented technology.

121.    Search engine designers are selective about what content and information they disclose on search results pages.

122.    Google designs its Internet search results page (at www.google.com) to be efficient.

123.    Google designs its Internet search results page (at www.google.com) to be sleek.

124.    Google designs its Internet search results page (at www.google.com) to include significant whitespace on the screen.

125.    Google designs its Internet search results page (at www.google.com) to be minimalist.

126.    Google is selective about the content (*e.g.*, images, text, or links) that appears as part of the standard interface of its Internet search results page (at www.google.com).

127.    Google scrutinizes what content to include on its Internet search results page (at www.google.com).

128.    Google's "Must Include" or "Show Results with" text were each one of the few pieces of content that Google has provided nearby each individual search result shown on its

Internet search results page (at www.google.com) that a user can click. That information is directly related to the search terms entered by a user.

129.    A representative image is shown below:



*See* www.google.com.

130.    The "Missing: []" annotation is depicted in paragraph 129.

131.    The "Show results with: []" annotation is depicted in paragraph 129.

132.    Google's "Show results with: []" annotation is one of the few pieces of content that Google provides nearby each individual search result shown on its Internet search results page (at www.google.com) that links to a revised search available at the google.com domain.

133.    Google's "Show results with: []" annotation is one of the few hyperlinked annotations that Google provides nearby each individual search result shown on its Internet search results page (at www.google.com) that a user can click.

134.    Google has maintained the above annotations because they improve the functionality of Google's Internet search results page (at www.google.com).

135.    Google implemented the "Missing: []" annotation on Google's Internet search results page (at www.google.com) to improve its search results page.

136.    Google implemented the "Show results with: []" annotation on Google's Internet search results page (at www.google.com) to improve the functionality of its Internet search results page.

137.    Google has received positive feedback from users regarding the "Missing: []" annotation on Google's Internet search results page (at www.google.com).

138.    Google has received positive feedback from users regarding the "Show results with: []" annotation on Google's Internet search results page (at www.google.com).

### U.S. Patent No. 10,585,959

139.    On March 10, 2020, the USPTO duly and legally issued United States Patent No. 10,585,959 ("the '959 patent") entitled "Internet Search Results Annotation and Filtering for Missing Search Terms" to inventor Robert Osann, Jr.

140.    The '959 patent is presumed valid under 35 U.S.C. § 282.

141.    AccuSearch owns all rights, title, and interest in the '959 patent.

142.    AccuSearch has not granted Defendant an approval, an authorization, or a license to the rights under the '959 patent.

143.    The claims of the '959 patent recite specific solutions (e.g., annotations and filtering) that improve graphical user interfaces (GUIs).

144.    Claim 11 of the '959 patent follows:

11. A method for providing **annotated** Internet search results suitable for display to a user on a computing device, wherein the method comprises:

[a] receiving a search request provided by the user from the computing device, the search request comprising one or more search term elements;

[b] causing an Internet search to be performed based at least in part on the search request in response to the user's provision of the search request;

[c] transmitting to the computing device, via an Internet, information comprising at least one **automatically annotated** Internet search result;

[d] wherein the transmitted information is suitable for display on a search results webpage on the computing device;

[e] wherein the **automatically annotated** Internet search result is provided for display on the search results webpage as a search result grouping referencing a webpage associated with the **automatically annotated** Internet search result;

[e1] wherein the search result grouping comprises an **annotation** and at least one of: a title, an Internet link, an excerpt, or a URL;

[e2] wherein the **annotation** is provided **in response to a presence or absence** of the one or more search term elements in the referenced webpage;

[e3] wherein the **annotation is automatically placed** in the search result grouping so that it is associated with the automatically annotated Internet search result; and

[e4] wherein the annotation comprises one or more search term elements **missing** in the referenced webpage and **provides an indication that the automatically annotated Internet search result is less relevant with regard to what the user seeks**.

'959 patent, claim 11 (annotated).

145.    Claim 12 of the '959 patent follows:

12. The method of claim 11, **wherein the annotation is provided also in response to a presence or absence of the one or more search term elements in one or more descendant webpages of the referenced webpage**, and wherein each **descendant of the referenced webpage is a webpage linked directly one level from the referenced webpage**.

*Id.* claim 2 (annotated).

146.    Claim 16 of the '959 patent follows:

16. The method of claim 11, wherein the system further provides **a selectable filtering function that, when selected by the user, causes one or more Internet search results referencing webpages that are missing one or more search term**

**elements to be removed from being displayed on the search results webpage on the computing device**.

*Id.* claim 15 (annotated).

147.    Each of the claims of the '959 patent recites a specific solution (*e.g.*, website structural analysis, specific annotations and specific filtering) that improves Internet search page GUIs by addressing problems unique to then-conventional Internet search technology and GUIs.

148.    Each of the claims of the '959 patent recites improvements to an Internet search webpage GUI that operates within the structure of Internet search technology.

149.    Each of the claims of the '959 patent requires the presentation of a specifically limited set of Internet search data in a particular manner on an Internet search GUI.

150.    Each of the '959 patent's claimed inventions create a specific type of interactive Internet search GUI. For example, one or more allow a user to filter Internet search results in an unconventional and inventive manner.

151.    Each of the claims of the '959 patent recite functionality that "offers users the opportunity to annotate and/or filter their search results to delineate and/or remove references to sites that offer unwanted or irrelevant categories of information and as a result provide the user with a set of search results that offer and/or emphasize information of substance on their search topic." *Id.* at 3:7-12.

152.    Each of the claims of the '959 patent recites at least one specific mechanism to improve user experiences when viewing and interacting with Internet search results. But each of the claims are directed to even more beyond improving user experience alone. They each improved existing Internet search technology.

153.    Each of the claims of the '959 patent recites a specific implementation (*e.g.*, annotations and/or filtering) that solves one or more problems unique to the Internet (*e.g.*,

avoiding or reducing the number of URLs provided in response to an Internet search that are directed to webpages containing irrelevant information or that do not contain the specific search terms a user entered, and offering users the opportunity to annotate and/or filter their search results to delineate and/or remove references to sites that offer unwanted or irrelevant categories of information and as a result provide the user with a set of Internet search results that offer and/or emphasize information of substance on their search topic.).

154.    The foregoing implementations and solutions are supported by the specification of the '959 patent. *Id*. at 3:7-12, 12:5-32.

155.    Stated another way, each claim of the '959 patent is directed to a new technique for prioritizing the results of the conventional Internet search and the conventional Internet search page GUI.

156.    None of the limitations listed above in paragraphs 144-146 related to "annotation" was well-understood, routine, or conventional as of the Priority Date.

157.    None of the limitations listed above in paragraphs 144-146 related to "descendent webpages," "filtering," "missing . . . search term elements," or removal of search results was well-understood, routine, or conventional as of the Priority Date.

158.    The ordered combination of the limitations listed above in paragraphs 144-146, especially in connection with those described in paragraphs 156-157, transformed any potentially abstract aspect of the claims, including transforming them into a patent-eligible application to the extent that they could potentially have been described as abstract.

159.    The limitations recited in the claims of the '959 patent are narrow and precise. For example, one or more claims recite specific improvements to an Internet search webpage GUI. The following are a few examples.

160.    At least one claim of the '959 patent recites the manner in which search results are presented on the GUI: in groupings. *See, e.g.,* ('959 patent at claim 1 or claim 11).

161.    At least one claim of the '959 patent recites the content of the groupings (*e.g.*, a title, Internet link, excerpt, or a URL). *Id.*

162.    At least one claim of the '959 patent recites "annotated Internet search result[s]". *Id.*

163.    At least one claim of the '959 patent recites the specific placement of the annotations (*e.g.*, in or adjacent to the groupings). *Id.*

164.    At least one claim of the '959 patent recites the specific content of the annotations (*e.g.*, listing one or more Internet search terms that are missing in a referenced webpage). *Id.*

165.    At least one claim of the '959 patent recites that the missing-search-term annotations are used in connection with a selectable filtering function (*see, e.g.*, '959 patent at claim 3 or claim 16).

166.    At least one claim of the '959 patent recites a technical methodology involving the identification and analysis of descendant webpages (*see, e.g.*, '959 patent at claim 2 or claim 12)

167.    At least one claim of the '959 patent recites that when the filtering function is engaged, certain search results are removed from the search results webpage. *Id.*

168.    Each of the claims of the '959 patent is directed to a specific system or method.

169.    Each of the claims of the '959 patent is directed to an improvement to the Internet search technology that existed on or before the Priority Date.

170.    Each of the claims of the '959 patent recites a manner of annotating Internet search results that was unconventional on or before the Priority Date.

171.    One of more of the claims of the '959 patent recites a manner of filtering Internet search results that was unconventional on or before the Priority Date.

172.    Each of the claims of the '959 patent contains at least one inventive concept that confers significantly more than the mere application of a known practice to generic computer components.

173.    The '959 patent thus covers eligible subject matter under 35 U.S.C. § 101.

174.    On information and belief, Google contests one or more of the factual assertions made in paragraphs 51-138 or 143-172 of this Complaint.

175.    On information and belief, Google contests that the benefits discussed in paragraphs 51-138 of this Complaint are captured in one or more claims of the '959 patent.

**U.S. Patent No. 10,867,001**

176.    On December 15, 2020, the USPTO duly and legally issued United States Patent No. 10,867,001 ("the '001 patent") entitled "Internet Search Results Annotation for Search Term Elements Present or Absent in Referenced Webpages and Descendant Webpages" to inventor Robert Osann, Jr.

177.    The '001 patent is presumed valid under 35 U.S.C. § 282.

178.    AccuSearch owns all rights, title, and interest in the '001 patent.

179.    AccuSearch has not granted Defendant an approval, an authorization, or a license to the rights under the '001 patent.

180.    The specification of the '001 patent is the same as the '959 patent specification, and solves the problems described in the '959 patent specification and discussed in detail above at paragraphs 51-138.

181.    The claims of the '001 patent recite specific solutions (*e.g.*, annotations and filtering) that improve graphical user interfaces (GUIs).

182.    Claim 1 of the '001 patent follows:

1. A method for providing an **annotation for an Internet search** result for display to a user of an Internet search engine to warn the user when the Internet search result's referenced webpage is missing one or more search term elements supplied by the user, the method comprising:

[a] receiving one or more search term elements supplied by a user of an Internet search engine from the user's computing device,

[a1] wherein the Internet search engine generates, based at least in part on the supplied search term elements, at least one Internet search result referencing a webpage, for display on a search results webpage on the user's computing device,

[a2] wherein the Internet search result is displayed on the search results webpage as a search result grouping, and

[a3] wherein the search result grouping is comprised of at least one of: a title for the referenced webpage, an Internet link for the referenced webpage, an excerpt of the referenced webpage, or a URL for the referenced webpage;

[b] determining whether to **generate an annotation for the Internet search result** for display on the search results webpage,

[b1] wherein it is determined to **generate the annotation if at least one search term element is missing** in the Internet search result's referenced webpage,

[b2] wherein the **annotation is comprised of a text representing the at least one search term element that is missing in the Internet search result's referenced webpage**; and

[c] if it is determined to **generate the annotation for the Internet search result, causing the annotation** to be displayed adjacent to or within the Internet search result's search result grouping on the search results webpage.

'001 patent, claim 1 (annotated).

183.    Claim 5 of the '001 patent follows:

5. The method of claim 1, wherein it is determined not to generate **the annotation for the Internet search result** if each search term element that is missing in the referenced webpage **is present in one or more descendant webpages of the referenced webpage**, wherein **a descendant webpage of the referenced webpage is a webpage linked directly one level from the referenced webpage**.

*Id*. claim 5 (annotated).

184.    Claim 9 of the '001 patent follows:

9. The method of claim 1, further comprising providing **a selectable filtering function that, when selected by the user, causes the Internet**

**search result whose referenced webpage is missing the at least one search term element to be removed from being displayed on the search results webpage**.

*Id.* claim 9 (annotated).

185.    Each of the claims of the '001 patent recites a specific solution (*e.g.*, website structural analysis, specific annotations, and specific filtering) that improves Internet search page GUIs by addressing problems unique to then-conventional Internet search technology and GUIs.

186.    Each of the claims of the '001 patent recites improvements to an Internet search webpage GUI that operates within the structure of Internet search technology.

187.    Each of the claims of the '001 patent requires the presentation of a specifically limited set of Internet search data in a particular manner on an Internet search GUI.

188.    Each of the '001 patent's claimed inventions create a specific type of interactive Internet search GUI. For example, one or more allow a user to filter Internet search results in an unconventional and inventive manner.

189.    Each of the claims of the '001 patent recite functionality that "offers users the opportunity to annotate and/or filter their search results to delineate and/or remove references to sites that offer unwanted or irrelevant categories of information and as a result provide the user with a set of search results that offer and/or emphasize information of substance on their search topic." '001 patent at 3:11-16.

190.    Each of the claims of the '001 patent recites at least one specific mechanism to improve user experiences when viewing and interacting with Internet search results. But each of the claims are directed to even more beyond improving user experience alone. They each improved existing Internet search technology.

191.    Each of the claims of the '001 patent recites a specific implementation (*e.g.*, annotations and/or filtering) that solves one or more problems unique to the Internet (*e.g.*,

avoiding or reducing the number of URLs provided in response to an Internet search that are directed to webpages containing irrelevant information or that do not contain the specific search terms a user entered, and offering users the opportunity to annotate and/or filter their search results to delineate and/or remove references to sites that offer unwanted or irrelevant categories of information and as a result provide the user with a set of Internet search results that offer and/or emphasize information of substance on their search topic.).

192.    The foregoing implementations and solutions are supported by the specification of the '001 patent. *Id*. at 3:11-16; 12:6-33.

193.    Stated another way, each claim of the '001 patent is directed to a new technique for prioritizing the results of the conventional Internet search and the conventional Internet search page GUI.

194.    None of the limitations listed above in paragraphs 182-184 related to "annotation" was well-understood, routine, or conventional as of the Priority Date.

195.    None of the limitations listed above in paragraphs 182-184 related to "descendent webpages," "filtering," "missing . . . search term elements," or removal of search results was well-understood, routine, or conventional as of the Priority Date.

196.    The ordered combination of the limitations listed above in paragraphs 182-184, especially in connection with those described in paragraphs 194-195, transformed any potentially abstract aspect of the claims, including transforming them into a patent-eligible application to the extent that they could potentially have been described as abstract.

197.    The limitations recited in the claims of the '001 patent are narrow and precise. For example, one or more claims recite specific improvements to an Internet search webpage GUI. The following are a few examples.

198.    At least one claim of the '001 patent recites the manner in which search results are presented on the GUI: in groupings. *See, e.g.,* ('001 patent at claim 1).

199.    At least one claim of the '001 patent recites the content of the groupings (*e.g.*, a title, Internet link, excerpt, or a URL). *Id.*

200.    At least one claim of the '001 patent recites "annotated Internet search result[s]". *Id.*

201.    At least one claim of the '001 patent recites the specific placement of the annotations (*e.g.*, in or adjacent to the groupings). *Id.*

202.    At least one claim of the '001 patent recites the specific content of the annotations (*e.g.*, listing one or more Internet search terms that are missing in a referenced webpage). *Id.*

203.    At least one claim of the '001 patent recites that the missing-search-term annotations are used in connection with a selectable filtering function (*see, e.g.,* '001 patent at claim 9).

204.    At least one claim of the '001 patent recites that when the filtering function is engaged, certain search results are removed from the search results webpage. *Id.*

205.    At least one claim of the '001 patent recites a technical methodology involving the identification and analysis of descendant webpages (*see, e.g.*, *id*. at claim 5).

206.    Each of the claims of the '001 patent is directed to a specific system or method.

207.    Each of the claims of the '001 patent is directed to an improvement to the Internet search technology that existed on or before the Priority Date.

208.    Each of the claims of the '001 patent recites a manner of annotating Internet search results that was unconventional on or before the Priority Date.

209.    One of more of the claims of the '001 patent recites a manner of filtering Internet search results that was unconventional on or before the Priority Date.

210.    Each of the claims of the '001 patent contains at least one inventive concept that confers significantly more than the mere application of a known practice to generic computer components.

211.    The '001 patent thus covers eligible subject matter under 35 U.S.C. § 101.

212.    On information and belief, Google contests one or more of the factual assertions made in paragraphs 51-138 or 180-210 of this Complaint.

213.    On information and belief, Google contests that the benefits discussed in paragraphs 51-138 of this Complaint are captured in one or more claims of the '001 patent.

### U.S. Patent No. 11,100,184

214.    On August 24, 2021, the USPTO duly and legally issued United States Patent No. 11,100,184 ("the '184 patent") entitled "Internet Search Results Annotation, Filtering, and Advertising With Respect to Search Term Elements" to inventor Robert Osann, Jr.

215.    The '184 patent is presumed valid under 35 U.S.C. § 282.

216.    AccuSearch owns all rights, title, and interest in the '184 patent.

217.    AccuSearch has not granted Defendant an approval, an authorization, or a license to the rights under the '184 patent.

218.    The specification of the '184 patent is the same as the '959 patent specification, and solves the problems described in the '959 patent specification and discussed in detail above at paragraphs 51-138.

219.    The claims of the '184 patent recite specific solutions (*e.g.*, annotations and filtering) that improve graphical user interfaces (GUIs)

220.    Claim 1 of the '184 patent follows:

1. In an Internet search system for displaying search results during an Internet search process, the search results being generated based on user-specified search term elements, where at least one search result references a webpage that is **<u>missing at least one search term element</u>**, a method for providing an interactive graphical user interface for the user to readily discern such search result without opening its referenced webpage, the method comprising:

[a]receiving, on a server, a first search request submitted via the Internet by a user operating a computing device with a display screen, wherein the first search request is comprised of one or more search term elements;

[b] generating a plurality of search results based at least in part on the submitted first search request, wherein the plurality of search results is comprised of:

[b1] (i) a first type of search result which references a first webpage that contains all submitted search term elements; and

[b2] (ii) **<u>a second type of search result which references a second webpage that is missing at least one submitted search term element</u>**;

[c] causing the display screen to display the first and second types of search results on a search results webpage;

[d] causing the display screen to display the first type of search result as a first search result grouping, wherein the first search result grouping is comprised of one or more of: a title for the first webpage, an Internet link for the first webpage, an excerpt of the first webpage, or a URL for the first webpage, and wherein the first search result grouping **<u>does not include any annotation</u>** for missing search term elements;

[e] causing the display screen to display the second type of search result as a second search result grouping, wherein **<u>the second search result grouping is comprised of an annotation showing the at least one search term element missing in the second webpage and one or more of: a title for the second webpage, an Internet link for the second webpage, an excerpt of the second webpage, or a URL for the second webpage, and wherein the annotation is comprised of a text representing the at least one search term element</u>**; and

[e1] **<u>wherein the annotation enables the user to readily discern, without opening the second webpage and navigating away from the search results webpage, that the second webpage is missing the at least one search term element</u>**, and by not opening the second webpage a faster execution is enabled for the Internet search process.

'184 patent, claim 1 (annotated).

221.    Claim 6 of the '184 patent follows:

6. The method of claim 1, wherein the plurality of search results is further comprised of:

[a] (i) a third type of search result which references a third webpage that is missing at least one search term element, wherein **a descendant webpage linked directly one level from the third webpage contains the at least one missing search term element**; and

[b] (ii) a fourth type of search result which references a fourth webpage that is missing at least one search term element, **wherein all descendant webpages linked directly one level from the fourth webpage are also missing the at least one search term element**; and

[c] further comprising:

[c1] **causing the display screen to display the fourth type of search result in a same manner as the second search result grouping**.

*Id.* claim 6 (annotated).

222.    Claim 3 of the '184 patent follows:

3. The method of claim 1 further comprising: causing the display screen to display, **in combination with the annotation** within the second search result grouping, **a selectable filtering function that, when selected, automatically causes the second search result grouping to be removed from the search results webpage**.

*Id.* claim 3 (annotated).

223.    Each of the claims of the '184 patent recites a specific solution (*e.g.*, website structural analysis, specific annotations, and specific filtering) that improves Internet search page GUIs by addressing problems unique to then-conventional Internet search technology and GUIs.

224.    Each of the claims of the '184 patent recites improvements to an Internet search webpage GUI that operates within the structure of Internet search technology.

225.    Each of the claims of the '184 patent requires the presentation of a specifically limited set of Internet search data in a particular manner on an Internet search GUI.

226.    Each of the '184 patent's claimed inventions create a specific type of interactive Internet search GUI. For example, one or more allow a user to filter Internet search results in an unconventional and inventive manner.

227.    Each of the claims of the '184 patent recite functionality that "offers users the opportunity to annotate and/or filter their search results to delineate and/or remove references to

sites that offer unwanted or irrelevant categories of information and as a result provide the user with a set of search results that offer and/or emphasize information of substance on their search topic." '184 patent at 3:14-19.

228. Each of the claims of the '184 patent recites at least one specific mechanism to improve user experiences when viewing and interacting with Internet search results. But each of the claims are directed to even more beyond improving user experience alone. They each improved existing Internet search technology.

229. Each of the claims of the '184 patent recites a specific implementation (*e.g.*, annotations and/or filtering) that solves one or more problems unique to the Internet (*e.g.*, avoiding or reducing the number of URLs provided in response to an Internet search that are directed to webpages containing irrelevant information or that do not contain the specific search terms a user entered, and offering users the opportunity to annotate and/or filter their search results to delineate and/or remove references to sites that offer unwanted or irrelevant categories of information and as a result provide the user with a set of Internet search results that offer and/or emphasize information of substance on their search topic.).

230. The foregoing implementations and solutions are supported by the specification of the '184 patent. *Id*. at 3:14-19; 12:14-41.

231. Stated another way, each claim of the '184 patent is directed to a new technique for prioritizing the results of the conventional Internet search and the conventional Internet search page GUI.

232. None of the limitations listed above in paragraphs 220-222 related to "annotation" was well-understood, routine, or conventional as of the Priority Date.

233.    None of the limitations listed above in paragraphs 220-222 related to "descendent webpages," "filtering," "missing . . . search term elements," or removal of search results was well-understood, routine, or conventional as of the Priority Date.

234.    The ordered combination of the limitations listed above in paragraphs 220-222, especially in connection with those described in paragraphs 232-233, transformed any potentially abstract aspect of the claims, including transforming them into a patent-eligible application to the extent that they could potentially have been described as abstract.

235.    The limitations recited in the claims of the '184 patent are narrow and precise. For example, one or more claims recite specific improvements to an Internet search webpage GUI. The following are a few examples.

236.    At least one claim of the '184 patent recites the manner in which search results are presented on the GUI: in groupings. *See, e.g.,* ('184 patent at claim 1).

237.    At least one claim of the '184 patent recites the content of the groupings (*e.g.*, a title, Internet link, excerpt, or a URL). *Id.*

238.    At least one claim of the '184 patent recites annotated Internet search results. *Id.*

239.    At least one claim of the '184 patent recites the specific placement of the annotations (*e.g.*, in or adjacent to the groupings). *Id.*

240.    At least one claim of the '184 patent recites the specific content of the annotations (*e.g.*, listing one or more Internet search terms that are missing in a referenced webpage). *Id.*

241.    At least one claim of the '184 patent recites that the missing-search-term annotations are used in connection with a selectable filtering function (*see, e.g.,* '184 patent at claim 3).

242.    At least one claim of the '184 patent recites that when the filtering function is engaged, certain search results are removed from the search results webpage. *Id.*

243.    At least one claim of the '184 patent recites a technical methodology involving the identification and analysis of descendant webpages (*see, e.g.*, *Id.* at claim 6).

244.    Each of the claims of the '184 patent is directed to a specific system or method.

245.    Each of the claims of the '184 patent is directed to an improvement to the Internet search technology that existed on or before the Priority Date.

246.    Each of the claims of the '184 patent recites a manner of annotating Internet search results that was unconventional on or before the Priority Date.

247.    One of more of the claims of the '184 patent recites a manner of filtering Internet Search results that was unconventional on or before the Priority Date.

248.    Each of the claims of the '184 patent contains at least one inventive concept that confers significantly more than the mere application of a known practice to generic computer components.

249.    The '184 patent thus covers eligible subject matter under 35 U.S.C. § 101.

250.    On information and belief, Google contests one or more of the factual assertions made in paragraphs 51-138 or 218-248 of this Complaint.

251.    On information and belief, Google contests that the benefits discussed in paragraphs 51-138 of this Complaint are captured in one or more claims of the '184 patent

**U.S. Patent No. 11,971,937**

252.    On April 30, 2024, the USPTO duly and legally issued United States Patent No. 11,971,937 ("the '937 patent") entitled "Internet Search Results Annotation, Filtering, and Advertising with Respect to Search Term Elements" to inventor Robert Osann, Jr.

253.    The '937 patent is presumed valid under 35 U.S.C. § 282.

254. AccuSearch owns all rights, title, and interest in the '937 patent.

255. AccuSearch has not granted Defendant an approval, an authorization, or a license to the rights under the '937 patent.

256. The specification of the '937 patent is the same as the '959 patent specification, and solves the problems described in the '959 patent specification and discussed in detail above at paragraphs 51-138.

257. The claims of the '937 patent recite specific solutions (*e.g.*, annotations and filtering) that improve graphical user interfaces (GUIs).

258. Claim 15 of the '937 patent follows:

15. A system for providing an enhanced interactive graphical Internet search user interface for an Internet search process combining Internet search, **annotation**, and filtering that enables a search engine user to request an Internet search and automatically remove one or more search results that each reference a webpage that does not contain a desired search term element, enabling a faster operation of Internet search for the search engine user by enabling the search engine user to avoid spending time visiting a webpage that is **missing the desired search term element**, the system comprising:

[a] one or more of the servers for operating a search engine and for providing an Internet search user interface to a search engine user for operation on a personal computing device having a display screen;

[b] wherein the one or more servers receive a search request from the search engine user via the personal computing device, the search request comprising one or more search term elements;

[c] wherein the one or more servers generate, by operating the search engine in response to receiving the search request, **a first Internet search result that references a first webpage that is missing a first search term element and a second Internet search result that references a second webpage**;

[d] wherein the one or more servers generate and provide, for display on the personal computing device, the Internet search user interface;

[e] wherein the Internet search user interface comprises the first Internet search result and **a first warning to the search engine user that the first webpage is missing the first search term element, wherein the first warning comprises a text representing the first search term element**;

[f] wherein the first Internet search result is organized for display as a first search result grouping comprising a first excerpt for the first webpage, a first Internet link for the first webpage, **and the first warning**;

[g] wherein the Internet search user interface further comprises the second Internet search result, wherein the second Internet search result is organized for display as a second search result grouping that comprises a second excerpt from the second webpage and a second Internet link for the second webpage but does not comprise any warning that any of the one or more search term elements is missing from the second webpage;

[h] wherein the first and second search result groupings are each a unique search result grouping displayed separately from each other;

[i] wherein the Internet search user interface provides a **filtering option, wherein the search engine user's selection of the filtering option causes an updated Internet search user interface to be generated and provided, by the one or more servers, for display on the personal computing device**; and

[j] wherein the updated Internet search user interface does not display the first Internet search result.

*Id*. claim 15 (annotated).

259.    Claim 19 of the '937 patent follows:

19. The system of claim 18, wherein the first webpage has **one or more descendant webpages, where each of the one or more descendant webpages is also missing the first search term element, and wherein each of the one or more descendant webpages is linked directly one level from the first webpage**.

*Id*. claim 19 (annotated).

260.    Each of the claims of the '937 patent recites a specific solution 271-272, website structural analysis, specific annotations and specific filtering) that improves Internet search page GUIs by addressing problems unique to then-conventional Internet search technology and GUIs.

261.    Each of the claims of the '937 patent recites improvements to an Internet search webpage GUI that operates within the structure of Internet search technology.

262.    Each of the claims of the '937 patent requires the presentation of a specifically limited set of Internet search data in a particular manner on an Internet search GUI.

263. Each of the '937 patent's claimed inventions create a specific type of interactive Internet search GUI. For example, each allows a user to filter Internet search results in an unconventional and inventive manner.

264. Each of the claims of the '937 patent recite functionality that "offers users the opportunity to annotate and/or filter their search results to delineate and/or remove references to sites that offer unwanted or irrelevant categories of information and as a result provide the user with a set of search results that offer and/or emphasize information of substance on their search topic." '937 patent at 3:26-31.

265. Each of the claims of the '937 patent recites at least one specific mechanism to improve user experiences when viewing and interacting with Internet search results. But each of the claims are directed to even more beyond improving user experience alone. They each improved existing Internet search technology.

266. Each of the claims of the '937 patent recites a specific implementation (*e.g.*, annotations and/or filtering) that solves one or more problems unique to the Internet (*e.g.*, avoiding or reducing the number of URLs provided in response to an Internet search that are directed to webpages containing irrelevant information or that do not contain the specific search terms a user entered, and offering users the opportunity to annotate and/or filter their search results to delineate and/or remove references to sites that offer unwanted or irrelevant categories of information and as a result provide the user with a set of Internet search results that offer and/or emphasize information of substance on their search topic.).

267. The foregoing implementations and solutions are supported by the specification of the '937 patent. *Id.* at 3:26-31; 12:29-56.

268.    Stated another way, each claim of the '937 patent is directed to a new technique for prioritizing the results of the conventional Internet search and the conventional Internet search page GUI.

269.    None of the limitations listed above in paragraphs 258-259 related to "annotation" was well-understood, routine, or conventional as of the Priority Date.

270.    None of the limitations listed above in paragraphs 258-259 related to "descendent webpages," "filtering," "missing . . . search term elements," or removal of search results was well-understood, routine, or conventional as of the Priority Date.

271.    The ordered combination of the limitations listed above in paragraphs 258-259, especially in connection with those described in paragraphs 269-270, transformed any potentially abstract aspect of the claims, including transforming them into a patent-eligible application to the extent that they could potentially have been described as abstract.

272.    The limitations recited in the claims of the '937 patent are narrow and precise. For example, one or more claims recite specific improvements to an Internet search webpage GUI. The following are a few examples.

273.    At least one claim of the '937 patent recites the manner in which search results are presented on the GUI: in groupings. *See, e.g.,* ('937 patent at claim 1 or claim 15).

274.    At least one claim of the '937 patent recites the content of the groupings (*e.g.*, an excerpt and an Internet link). *Id.*

275.    At least one claim of the '937 patent recites annotated Internet search results. *Id.*

276.    At least one claim of the '937 patent recites the specific placement of the annotations or "warning" that a result is missing a search term element (*e.g.*, in the groupings). *Id.*

277.    At least one claim of the '937 patent recites the specific content of the annotations or "warning" (*e.g.*, text representing the missing search term element). *Id.*

278.    Each of the claims of the '937 patent recites that the missing-search-term annotations are used in connection with a selectable filtering function. *Id.*

279.    Each of the claims of the '937 patent recites that when the filtering function is engaged, certain search results are removed from the search results webpage. *Id.*

280.    At least one claim of the '937 patent recites a technical methodology involving the identification and analysis of descendant webpages (*see, e.g.*, *Id*. at claim 9).

281.    Each of the claims of the '937 patent is directed to a specific system or method.

282.    Each of the claims of the '937 patent is directed to an improvement to the Internet search technology that existed on or before the Priority Date.

283.    Each of the claims of the '937 patent recites a manner of annotating Internet search results that was unconventional on or before the Priority Date.

284.    Each of the claims of the claims of the '937 patent recites a manner of filtering Internet Search results that was unconventional on or before the Priority Date.

285.    Each of the claims of the '937 patent contains at least one inventive concept that confers significantly more than the mere application of a known practice to generic computer components.

286.    The '937 patent thus covers eligible subject matter under 35 U.S.C. § 101.

287.    On information and belief, Google contests one or more of the factual assertions made in paragraphs 51-138 or 256-285 of this Complaint.

288.    On information and belief, Google contests that the benefits discussed in paragraphs 51-138 of this Complaint are captured in one or more claims of the '937 patent

## GOOGLE'S ACKNOWLEDGEMENT
## OF PATENT-ELIGIBLE SUBJECT MATTER

289.    According to Google, speaking through its patent counsel, the following renders

claims patent eligible:

> Applicant's attorney respectfully requests reconsideration of the 101 rejection. For
> example, the Applicant's attorney requests that the examiner consider how to [sic]
> combination of claim elements can, for example, enable "improving the search
> engine system performance and saving users a large degree of human effort" by
> using "learned filters" to "narrow a user's search query and lead a user closer
> towards their end goal" and enabling "a search engine system to provide search
> results in specific domains which vary not just with the categorical query but also
> with the results available at the time of the search" as set forth in the specification
> . . . .

*See* Ex. 5, U.S. Patent Application No. 18/244,158, Jan. 2, 2025 Reply to Non-Final Office

Action, p. 8 (under "35 U.S.C. § 101 Rejection") (emphasis added).

290.    Google successfully argued that the following claim is eligible under 35 U.S.C. §

101:

> 1. (Currently Amended) A method implemented in a computing device comprising
> a physical storage and memory, the method comprising:
>
> displaying, by the device, a web page in a web browser at least in part by displaying
> web page text;
>
> receiving, by the device, a search term via a search field of the web browser while
> the web browser is displaying the web page;
>
> determining, by the device, that the search term occurs at least once within the web
> page text of the displayed web page;
>
> generating, by the device, in response to the determination, a first search query option
> and a second search query option based on the search term, wherein the first search
> query option comprises performing a web search of the search term and the second
> search query option comprises performing a search of the search term within the
> web page text of the displayed web page without performing the web search;
>
> displaying, by the device, the first and second search query options in association
> with the search field of the web browser;
>
> receiving, by the device, a selection of the second search query option; and
>
> providing for display, by the device, based on the selection of the second search
> query option, a notification of at least one occurrence of the search term within the
> web page text of the displayed web page.

*See* Ex. 6, U.S. Patent Application No. 15/490,841, June 20, 2018 Amendment and Remarks, p. 2

(amended claim) and 7-12 (arguments related to 35 U.S.C. § 101).

291.    For instance, Google stated the following:

In view of the above, the additional features of "displaying ... a web page in a web browser at least in part by displaying web page text;" "receiving ... a search term via a search field of the web browser while the web browser is displaying the web page;" "determining ... that the search term occurs at least once within the web page text of the displayed web page;" "generating ... in response to the determination, a first search query option and a second search query option based on the search term, wherein the first search query option comprises performing a web search of the search term and the second search query option comprises performing a search of the search term within the web page text of the displayed web page without performing the web search" <u>may be viewed as providing an improvement to the function of the computer by</u> "provid[ing] users with a quick and easy way to perform searches for terms located within a web page itself."

*Id.* p. 11 (emphasis added).

292.    Google concluded:

Furthermore, the claims recite meaningful limitations that add "significantly more" <u>because they solve an Internet-centric problem</u> with a claimed solution that is necessarily rooted in computer technology, similar to the additional elements in *DDR Holdings*[*LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014)]. Like the improved systems claimed in *DDR Holdings*, the pending claims "recite a specific improvement over prior systems, resulting in an improved <u>user interface</u> for electronic devices." These limitations, when the limitations of the present claims <u>are properly considered in a reasoned analysis in the manner required</u>, provide unconventional steps that confine the abstract idea to a particular useful application. It is readily apparent that the various elements, and combinations of such elements, amount to significantly more than an "abstract idea" alleged in the present rejection. Therefore, the claim recites patent eligible subject matter.
Accordingly, for at least the above reasons, Applicant submits that claim 1 recites statutory subject matter under 35 U.S.C. § 101.

*Id.* p. 12 (emphasis added).

293.    Google holds over **6,000** U.S. patents that have claims that meet the following

criteria: containing some version of the word "search" within 20 words of one or more of the

following words: "query" or "filter" or "keyword." https://patents.google.com (search for

*(CL=(search\* NEAR/20 (query OR filter OR keyword))) assignee:"Google" country:US*).

294.    In connection with many of the applications for the patents returned by the search cited in paragraph 293, Google made statements to the patent office to overcome rejections based upon 35 U.S.C. § 101 regarding patent-eligibility.

295.    Google has advocated for, prosecuted, and obtained at least a dozen US Patents directed to optimizing the visual content of Internet Search Engine HTML result pages, including but not limited to those issued patents and patent applications bearing classification code: "G06F16/9577: Optimizing the visual content, e.g. distillation of HTML documents."

296.    Google's patent website indicates that since the issuance of the Supreme Court's *Alice* decision on June 19, 2014, Google has been granted US patents with respect to at least eighteen (18) patent families that are related to classification code G06F16/9577 and contain the search string "search engine," including the following exemplary patents:

| Patent # | Title | Issue Date | Exemplary Excerpt |
|---|---|---|---|
| 10,049,170 | Methods and systems for selectively preventing third-party content from being displayed using undefined publisher identifier | August 14, 2018 | … The content items can also be <u>displayed on a search results web page</u>. For instance, the content provider computing device 115 can provide or be the source of ads or other content items for <u>display</u> in <u>content slots</u> of content web pages such as a web page of a company where the primary content of the web page is provided by the company, or for <u>display on a search results landing page provided by a search engine</u>. . . . '170 patent, 9:24-10:2 (emphasis added). |

| Patent # | Title | Issue Date | Exemplary Excerpt |
|---|---|---|---|
| 10,216,467 | Systems and methods for automatic content verification | February 26, 2019 | "The content item selection system can select a third-party content item and provide data to effect presentation of the content item with the requested webpage on a display of the client device. In some instances, the <u>content item is selected and served with a resource associated with a search query response</u>. For example, a search engine may return search results on a search results webpage and may include third-party content items related to the search query in one or more <u>content item slots of the search results webpage</u>." '467 patent, 2:67-3:9 (emphasis added). |
| 11,086,961 | Visual leaf page identification and processing | August 10, 2021 | The Internet provides access to a variety of resources. <u>Characterizing the format and content of any particular page is useful for search engine processing</u>. … For example, when a user requests image search results from a search engine for a particular type of activity, such as shopping or looking for recipes, <u>visual leaf pages</u> may provide content that is highly relevant to what the user is searching for, and these <u>visual leaf pages</u> may provide results that are <u>more relevant</u> than results presented by a page that is not a visual leaf page. '961 patent, 1:6-29 (emphasis added). |
| 11,288,336 | Systems and methods for providing content items in situations involving suboptimal network conditions | March 29, 2022 | The present disclosure relates generally to user <u>interfaces</u> for providing content items (e.g., webpages). … In one example, a web browser can allow a user to obtain a search results web page that includes <u>a list of search results</u> (e.g., in the form of web page links) that each direct the user to a corresponding search result (e.g., web page). '336 patent, 1:7-50 (emphasis added). |
| 10,831,845 | Generation of enhanced search results | November 10, 2020 | "1. A computer-implemented method, comprising:<br><br>receiving, at a search engine, a search query submitted by a user to the search engine, |

| Patent # | Title | Issue Date | Exemplary Excerpt |
|---|---|---|---|
| | | | and wherein the search engine is provided by a search service; |
| | | | receiving search results that the search engine generated responsive to the search query and a knowledge panel that is generated by the search engine and triggered based on the search query, and wherein the knowledge panel is separate from the search results and provides information specific to an entity with which the knowledge panel is associated; |
| | | | in response receiving the <u>knowledge panel</u>, identifying an entity that is associated with the search query by <u>identifying the entity with which the knowledge panel is associated</u>; |
| | | | determining, by the search service, that the user that submitted the search query to the search engine is associated with the entity which the knowledge panel is associated in an entity listing portal, <u>wherein the entity listing portal is provided by a portal listing service that is separate from the search service</u>; |
| | | | providing a search results webpage that includes the search results the search engine generated responsive to the query; and |
| | | | in response to determining that the user that submitted the search query to the search engine <u>is associated with the entity</u> with which the knowledge panel is associated in the entity listing portal, <u>providing, in the search results webpage, an interface through which edits to data associated with the entity within the entity listing portal can be provided</u>, wherein the interface through which the edits can be provided is provided by the portal listing service and without requiring the user to separately log in to or perform a separate authentication to the |

| Patent # | Title | Issue Date | Exemplary Excerpt |
|---|---|---|---|
| | | | portal listing service." '845 patent, claim 1 (emphasis added). |
| 12,038,997 | Generating a snippet packet based on a selection of a portion of a web page | July 16, 2024 | "The present disclosure relates generally to generating an interactive <u>snippet packet in response to a user input</u>. More particularly, the present disclosure relates to obtaining a user input to select a content item to save with a <u>snippet packet that can be later selected to provide the portion of the web page that includes the content item</u>." '997 patent, 1:14-19 (emphasis added). |

*See also*

https://patents.google.com/?q=(G06F16%2f9577)&q=(%22search+engine%22)&assignee=Google+Llc.&country=US&before=priority:20250206&after=priority:20140619&status=GRANT&sort=new.

297.    Google has advocated for, prosecuted, and obtained at least a dozen US Patents directed to the presentation of query results, including but not limited to those issued patents and patent applications bearing classification code: "G06F16/9538: Presentation of query results."

298.    Google's patent website indicates that since the issuance of the Supreme Court's *Alice* decision on June 19, 2014, Google has been granted US patents with respect to at least one hundred sixty-six patent families that are related to classification code G06F16/9538, which pertains to the "presentation of query results" including the following exemplary patents:

| Patent # | Title | Issue Date | Exemplary Excerpt |
|---|---|---|---|
| 11,372,941 | Search result filters from resource content | June 28, 2022 | 1.   A computer-implemented method, comprising:<br><br>receiving, for a first query, data identifying a set of resources that are determined to be responsive to the first query;<br><br>extracting, from the set of resources, a first set of keywords from the contents of the |

| Patent # | Title | Issue Date | Exemplary Excerpt |
|---|---|---|---|
| | | | resources that have been identified as responsive to the first query;<br><br>determining, from the first set of keywords, a set of candidate filters from the keywords, each candidate filter derived from one or more keywords in the first set of keywords, and wherein the set of candidate filters are a proper subset of the first set of keywords;<br><br>determining, from the set of candidate filters, a set of query filters for the first query, the determining comprising:<br><br>for each candidate filter, determining a term prominence for the candidate filter, wherein determining the term prominence comprises determining positions of terms of the candidate filter in the resources, and determining the term prominence is based on the determined positions of the terms of the candidate filter, wherein the term prominence indicates the positions of the terms of the candidate filter in the resources relative to positions of other terms in the resources;<br><br>for each candidate filter that meets a term prominence threshold that indicates positions of the terms of the candidate filter in the resources is prominent relative to other terms in the resources, selecting the candidate filter as a query filter to include in the set of query filters for the first query;<br><br>providing, in response to the first query, for display on a user device and with content results that identify content in the set of resources, the set of query filters for the first query;<br><br>receiving a selection of a particular query filter of the set of query filters for the first query; and<br><br>in response to receiving a selection of the particular query filter of the set of query filters, providing, for display on the user |

| Patent # | Title | Issue Date | Exemplary Excerpt |
|----------|-------|-----------|-------------------|
| | | | device, <u>a filtered set of content that identifies a set of content results for the particular query filter that is different than an unfiltered set of content results, and that is a proper subset of the unfiltered set of content results</u>. '941 patent, claim 1 (emphasis added). |

*See also*

https://patents.google.com/?q=(G06F16%2f9538)&assignee=google&country=US&after=filing: 20140619&status=GRANT&type=PATENT.

299.    Google's past and ongoing advocacy for, and successful provision of issued patents related to, the patentability of inventions relating to the optimizing the visual content of webpages in relation to Internet Search Engines demonstrates that the Asserted Patents should be deemed to cover patent eligible subject matter.

300.    On July 2, 2024, Google obtained the issuance of U.S. Patent 12,026,454 ('454 Patent"), titled "Storage of content associated with a resource locator." Claim 1 of the '454 Patent provides as follows:

> 1.    A method performed by a browser, the method comprising:
>
> presenting a webpage in a browser content window, the webpage being associated with a first resource address;
>
> <u>presenting an annotation area</u>, the <u>annotation area being outside the browser content window</u>;
>
> receiving, in association with a user account, <u>an annotation for a tab group in the annotation area</u>, the <u>tab group including the first resource address and a second resource address</u>; and
>
> storing the <u>annotation</u> in association with the user account and the tab group.

'454 Patent, claim 1 (emphasis added).

301.    The '454 Patent has been classified under G06F16/9577.

302.    On information and belief, and as evidenced by Google's application for and prosecution efforts towards the issuance of, the '454 Patent, Google believes that the '454 Patent is directed to patent eligible subject matter.

303.    The patent eligibility of the Asserted Patents is demonstrated, in part, by the similarities in subject matter between the Asserted Patents and the '454 Patent, including with respect to its common classification with the Asserted Patents and its claim limitations with respect to webpage annotations. (*See e.g.,* ¶¶ 67-82 above.)

304.    On April 10, 2018, Google obtained the issuance of U.S. Patent 9,940,646 ('646 Patent"), titled "Dynamic insertion of content items into resources." Claim 20 of the '646 Patent provides as follows:

> 20. A system comprising:
>
> > one or more processors; and
> >
> > a memory storing computer code instructions, the computer code instructions when executed by the one or more processors cause the one or more processors to:
> >
> > > receive and process publisher input regarding acceptable content item types and sizes for inclusion along with other content in a given resource, the publisher input also specifying how often content items are to appear in the resource;
> > >
> > > identify a user device that will render the resource as an article, including identifying a type of the user device, and including determining display capabilities of a device type associated with the user device;
> > >
> > > evaluate the resource, including formatting the resource as a single scrolling page that includes logical pages having boundaries determined by formatted content blocks and based on the display capabilities of the user device, wherein each of the formatted content blocks includes a portion of the resource that will fit in each of the logical pages based at

least in part on the display capabilities of the device type; and

select one or more content items for presentation along with a resource, the selection based at least in part on an evaluation of the resource and properties associated with the user device on which the content items will be presented with the resource.

'646 Patent, claim 20 (emphasis added).

305.    The '646 Patent is classified under G06F16/9577.

306.    On August 8, 2017, Google inserted the underlined language in paragraph 304 in order to overcome an examiner's rejection premised on 35 U.S.C. § 101. In overcoming the examiner's § 101 rejection, Google argued that the amendment to claim demonstrated that the § 101 rejection should be withdrawn.

307.    On information and belief, and as evidenced by Google's application for and prosecution efforts towards the issuance of, the '646 Patent, Google believes that the '646 Patent is directed to patent eligible subject matter.

308.    The patent eligibility of the Asserted Patents is demonstrated, in part, by the similarities between the Asserted Patents and the '646 Patent, including with respect to its common classification with the Asserted Patents and its claim limitations with respect to computing hardware (e.g., processors and memory). *See e.g.,* '959 Patent at claim 1 ("one or more servers comprising <u>one or more processors</u>, wherein at least one of the one or more servers is connected to the Internet" (emphasis added)).

309.    There are no material differences between any of the Google-owned patents discussed in this section and the Asserted Patents, which would support a finding of patent eligibility for any one or more Google-owned patent and a converse finding with respect to any one or more of the Asserted Patents.

## CLAIMS FOR RELIEF

### COUNT I – Infringement of the '959 patent

310. AccuSearch repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

311. Defendant (or those acting on its behalf) (i) made, makes, used, uses, sold, sells, imported, imports, offered to sell, and/or offers to sell the Google Search Engine Products and Services; and (ii) made, makes, used, uses, sold, sells, imported, imports, offered to sell access to, and/or offers to sell access to the Google Search Engine Functionality that infringed and infringes (literally and/or under the doctrine of equivalents) at least claim 11 of the '959 patent.

312. Defendant directs or controls every aspect of the Google Search Engine Functionality.

313. All limitations of the asserted claims are automatically performed by equipment or functions controlled by Defendant. None of the limitations practiced by any Google Search Engine Functionality operates without Defendant's continuous direct control.

314. Defendant profits from a user's use of the Google Search Engine Functionality and has the right (legally or contractually) and the ability (by modifying or disabling source code associated with any Google Search Engine Functionality; blocking any user license, or other applicable right or agreement, to use or access the Google Search Engine Functionality; or revoking access to the Google Search Engine Functionality) to stop or limit the infringement.

315. Defendant conditions participation in one or more activities or receipt of one or more benefits (*e.g.*, presentation or use of annotations or filtering in connection with the Google Search Engine Functionality) upon performance of one or more steps required for infringement (*e.g.*, entering keyword searches or clicking on hyperlinks associated with annotations or filtering functionality). Defendant also establishes the manner and timing of that performance

(*e.g.*, controlling how all aspects of the Google Search Engine Functionality operates, including how it responds to input from users as well as imposing requirements on users (*e.g.*, "Terms" linked on www.google.com), providing detailed instructions on how to use any accused products and/or services functions that practice the claims (*e.g.*, in manuals, online forums, web pages, and technical support), and dedicating resources to help users resolve problems). Further, Defendant continuously updates computer code that runs all aspects of Google Search Engine Functionality.

316.    Defendant also puts into service all aspects of the Google Search Engine Functionality. It provides software to end users and others, and the cloud and server functionality is intimately and continuously involved in operating every aspect of the Google Search Engine Functionality. For example, any and all functions of software or applications on an end-user device (or via the Internet) are fully and constantly under Defendant's control.

317.    One or more components of the Google Search Engine Functionality employed and provided a method for providing annotated Internet search results suitable for display to a user on a computing device, (*e.g.*, PC, mobile phone, or tablet device).



*See e.g.*, https://www.google.com.

### Introducing the three stages of Google Search

Google Search works in three stages, and not all pages make it through each stage:

1. **Crawling:** Google downloads text, images, and videos from pages it found on the internet with automated programs called crawlers.

2. **Indexing:** Google analyzes the text, images, and video files on the page, and stores the information in the Google index, which is a large database.

3. **Serving search results:** When a user searches on Google, Google returns information that's relevant to the user's query.

*See e.g.*, https://developers.google.com/search/docs/fundamentals/how-search-works.



*See e.g.*, https://www.google.com/chrome/browser-features/.

## About Google Data Centers

Google owns and operates data centers all over the world, helping to keep the internet humming 24/7. Learn how our relentless focus on innovation has made our data centers some of the most high-performing, secure, reliable, and efficient data centers in the world.

*See e.g.*, https://www.google.com/about/datacenters/.

318.    One or more components of the Google Search Engine Functionality employed and provided a method for providing annotated Internet search results suitable for display to a user on a computing device comprising receiving a search request (*e.g.,* "football exercise manual") provided by the user from the computing device, the search request comprising one or more search term elements.



*See e.g.*, https://www.google.com.

319.    One or more components of the Google Search Engine Functionality employed and provided a method for providing annotated Internet search results suitable for display to a user on a computing device comprising causing an Internet search to be performed based at least in part on the search request in response to the user's provision of the search request.



*See e.g.,* https://www.google.com; *id.* (*see, e.g.,* GET command, payloads, responses, and

duration and timing of responses available in developer tools); *see, e.g., id.* (certain examples):



*See also* [www.google.com](www.google.com) (*see* developer tools – network) (showing GET request);



*Id.* (showing payload of request);



*Id.* (showing response time);



*Id.* (showing response identifying missing term);



*Id.* (showing example responses from server). The foregoing images from www.google.com (*see* developer tools – network): "Example Developer Tool Images."

320.    One or more components of the Google Search Engine Functionality employed and provided a method for providing annotated Internet search results suitable for display to a user on a computing device comprising transmitting to the computing device, via an Internet, information comprising at least one automatically annotated Internet search result.



*See e.g.,* https://www.google.com; *id.* (*see, e.g.,* GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

321.    One or more components of the Google Search Engine Functionality employed and provided a method for providing annotated Internet search results suitable for display to a user on a computing device wherein the transmitted information is suitable for display on a search results webpage on the computing device.



*See e.g.*, https://www.google.com.

322.    One or more components of the Google Search Engine Functionality employed and provided a method for providing annotated Internet search results suitable for display to a user on a computing device wherein the automatically annotated Internet search result is provided for display on the search results webpage as a search result grouping referencing a webpage associated with the automatically annotated Internet search result (*e.g.,* the webpage accessible at https://tacklebar.com shown below).



*See e.g.*, https://www.google.com.

323.    One or more components of the Google Search Engine Functionality employed and provided a method for providing annotated Internet search results suitable for display to a user on a computing device wherein the search result grouping comprises an annotation and at least one of: a title, an Internet link, an excerpt, or a URL.



*See e.g.*, https://www.google.com.

324.    One or more components of the Google Search Engine Functionality employed and provided a method for providing annotated Internet search results suitable for display to a user on a computing device wherein the annotation is provided in response to a presence or absence of the one or more search term elements (*e.g.*, the search term element "exercise") in the referenced webpage.



*See e.g.,* https://www.google.com; *id.* (*see, e.g.,* GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

325.    One or more components of the Google Search Engine Functionality employed and provided a method for providing annotated Internet search results suitable for display to a user on a computing device wherein the annotation is automatically placed in the search result grouping so that it is associated with the automatically annotated Internet search result.



*See e.g.,* https://www.google.com; *id.* (*see, e.g.,* GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

---

### Introducing the three stages of Google Search

Google Search works in three stages, and not all pages make it through each stage:

1. **Crawling:** Google downloads text, images, and videos from pages it found on the internet with automated programs called crawlers.

2. **Indexing:** Google analyzes the text, images, and video files on the page, and stores the information in the Google index, which is a large database.

3. **Serving search results:** When a user searches on Google, Google returns information that's relevant to the user's query.

---

*See e.g.,* https://developers.google.com/search/docs/fundamentals/how-search-works.

326.    One or more components of the Google Search Engine Functionality employed and provided a method for providing annotated Internet search results suitable for display to a user on a computing device wherein the annotation comprises one or more search term elements missing in the referenced webpage and provides an indication that the automatically annotated Internet search result is less relevant with regard to what the user seeks.



*See e.g.*, https://www.google.com.

327.    Defendant directly infringed and infringes at least claim 11 of the '959 patent in violation of 35 U.S.C. § 271(a) by its previous and ongoing making, selling, selling access to,

importing, offering for sale, and/or offering to sell access to the Google Search Engine Products and Services and Google Search Engine Functionality.

328.    Defendant's infringement has damaged and continues to damage AccuSearch and has caused and continues to cause it to suffer irreparable harm and damages.

## COUNT II – Infringement of the '001 patent

329.    AccuSearch repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

330.    Defendant (or those acting on its behalf) (i) made, makes, used, uses, sold, sells, imported, imports, offered to sell, and/or offers to sell the Google Search Engine Products and Services; and (ii) made, makes, used, uses, sold, sells, imported, imports, offered to sell access to, and/or offers to sell access to the Google Search Engine Functionality that infringed and infringes (literally and/or under the doctrine of equivalents) at least claim 1 of the '001 patent.

331.    One or more components of the Google Search Engine Functionality employed and provided a method for providing an annotation for an Internet search result for display to a user of an Internet search engine to warn the user when the Internet search result's referenced webpage is missing one or more search term elements (*e.g.*, the search term element "exercise") supplied by the user.



*See e.g.*, https://www.google.com.

**Introducing the three stages of Google Search**

Google Search works in three stages, and not all pages make it through each stage:

1. **Crawling:** Google downloads text, images, and videos from pages it found on the internet with automated programs called crawlers.

2. **Indexing:** Google analyzes the text, images, and video files on the page, and stores the information in the Google index, which is a large database.

3. **Serving search results:** When a user searches on Google, Google returns information that's relevant to the user's query.

*See e.g.*, https://developers.google.com/search/docs/fundamentals/how-search-works.



*See e.g.*, https://www.google.com/chrome/browser-features/.

## About Google Data Centers

Google owns and operates data centers all over the world, helping to keep the internet humming 24/7. Learn how our relentless focus on innovation has made our data centers some of the most high-performing, secure, reliable, and efficient data centers in the world.

*See e.g.*, https://www.google.com/about/datacenters/.

332.    One or more components of the Google Search Engine Functionality employed and provided a method for providing an annotation for an Internet search result for display to a user of an Internet search engine to warn the user when the Internet search result's referenced webpage is missing one or more search term elements supplied by the user comprising receiving one or more search term elements supplied by a user of an Internet search engine from the user's computing device (*e.g.*, a PC, mobile phone, or tablet device).



*See e.g.,* https://www.google.com; *id.* (*see, e.g.,* GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

333.    One or more components of the Google Search Engine Functionality employed and provided a method for providing an annotation for an Internet search result for display to a user of an Internet search engine to warn the user when the Internet search result's referenced webpage is missing one or more search term elements supplied by the user wherein the Internet search engine generates, based at least in part on the supplied search term elements, at least one Internet search result referencing a webpage, (*e.g.,* the webpage accessible at

https://tacklebar.com) for display on a search results webpage (*e.g.,* the webpage shown in the screenshot below) on the user's computing device.



*See e.g.,* https://www.google.com; *id.* (*see, e.g.,* GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

  334. One or more components of the Google Search Engine Functionality employed and provided a method for providing an annotation for an Internet search result for display to a user of an Internet search engine to warn the user when the Internet search result's referenced webpage is missing one or more search term elements (*e.g.,* the search term element "exercise")

supplied by the user wherein the Internet search result is displayed on the search results webpage as a search result grouping.



*See e.g.*, https://www.google.com.

335.    One or more components of the Google Search Engine Functionality employed and provided a method for providing an annotation for an Internet search result for display to a user of an Internet search engine to warn the user when the Internet search result's referenced webpage is missing one or more search term elements supplied by the user wherein the search result grouping is comprised of at least one of: a title for the referenced webpage, an Internet link

for the referenced webpage, an excerpt of the referenced webpage, or a URL for the referenced webpage.



*See e.g.*, https://www.google.com.

336.    One or more components of the Google Search Engine Functionality employed and provided a method for providing an annotation for an Internet search result for display to a user of an Internet search engine to warn the user when the Internet search result's referenced webpage is missing one or more search term elements supplied by the user comprising determining whether to generate an annotation for the Internet search result for display on the search results webpage.



*See e.g.,* https://www.google.com; *id. (see, e.g.,* GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

Introducing the three stages of Google Search

Google Search works in three stages, and not all pages make it through each stage:

1. **Crawling:** Google downloads text, images, and videos from pages it found on the internet with automated programs called crawlers.

2. **Indexing:** Google analyzes the text, images, and video files on the page, and stores the information in the Google index, which is a large database.

3. **Serving search results:** When a user searches on Google, Google returns information that's relevant to the user's query.

*See e.g.,* https://developers.google.com/search/docs/fundamentals/how-search-works.

337.    One or more components of the Google Search Engine Functionality employed and provided a method for providing an annotation for an Internet search result for display to a user of an Internet search engine to warn the user when the Internet search result's referenced webpage is missing one or more search term elements supplied by the user wherein it is determined to generate the annotation if at least one search term element is missing in the Internet search result's referenced webpage.



*See e.g.*, https://www.google.com.

338.    One or more components of the Google Search Engine Functionality employed and provided a method for providing an annotation for an Internet search result for display to a

user of an Internet search engine to warn the user when the Internet search result's referenced webpage is missing one or more search term elements supplied by the user wherein the annotation is comprised of a text representing the at least one search term element (*e.g.,* the search term element "exercise") that is missing in the Internet search result's referenced webpage.



*See e.g.*, https://www.google.com.

339.    One or more components of the Google Search Engine Functionality employed and provided a method for providing an annotation for an Internet search result for display to a user of an Internet search engine to warn the user when the Internet search result's referenced

webpage is missing one or more search term elements supplied by the user comprising if it is determined to generate the annotation for the Internet search result, causing the annotation to be displayed adjacent to or within the Internet search result's search result grouping on the search results webpage.



*See e.g.,* https://www.google.com; *id.* (*see, e.g.,* GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

340.    Defendant directly infringed and infringes at least claim 1 of the '001 patent in violation of 35 U.S.C. § 271(a) by its previous and ongoing making, selling, selling access to,

importing, offering for sale, and/or offering to sell access to the Google Search Engine Products and Services and Google Search Engine Functionality.

341.    Defendant's infringement has damaged and continues to damage AccuSearch and has caused and continues to cause it to suffer irreparable harm and damages.

## COUNT III – Infringement of the '184 patent

342.    AccuSearch repeats, realleges, and incorporates by reference, as if fully set forth here, the allegations of the preceding paragraphs above.

343.    Defendant (or those acting on its behalf) (i) made, makes, used, uses, sold, sells, imported, imports, offered to sell, and/or offers to sell the Google Search Engine Products and Services; and (ii) made, makes, used, uses, sold, sells, imported, imports, offered to sell access to, and/or offers to sell access to the Google Search Engine Functionality that infringed and infringes (literally and/or under the doctrine of equivalents) at least claim 1 of the '184 patent.

344.    One or more components of the Google Search Engine Functionality employed and provided a method in an Internet search system for displaying search results during an Internet search process, the search results being generated based on user-specified search term elements, (*e.g.*, the search term elements "football," "exercise" and "manual") where at least one search result references a webpage that is missing at least one search term element, for providing an interactive graphical user interface for the user to readily discern such search result without opening its referenced webpage.



*See e.g.*, https://www.google.com.

Introducing the three stages of Google Search

Google Search works in three stages, and not all pages make it through each stage:

1. **Crawling:** Google downloads text, images, and videos from pages it found on the internet with automated programs called crawlers.

2. **Indexing:** Google analyzes the text, images, and video files on the page, and stores the information in the Google index, which is a large database.

3. **Serving search results:** When a user searches on Google, Google returns information that's relevant to the user's query.

*See e.g.*, https://developers.google.com/search/docs/fundamentals/how-search-works.



*See e.g.*, https://www.google.com/chrome/browser-features/.

## About Google Data Centers

Google owns and operates data centers all over the world, helping to keep the internet humming 24/7. Learn how our relentless focus on innovation has made our data centers some of the most high-performing, secure, reliable, and efficient data centers in the world.

*See e.g.*, https://www.google.com/about/datacenters/.

345.    One or more components of the Google Search Engine Functionality employed and provided a method in an Internet search system for displaying search results during an Internet search process, the search results being generated based on user-specified search term elements, where at least one search result references a webpage that is missing at least one search term element, for providing an interactive graphical user interface for the user to readily discern such search result without opening its referenced webpage comprising receiving, on a server, a first search request submitted via the Internet by a user operating a computing device (*e.g.*, a PC, mobile phone, or tablet device) with a display screen, wherein the first search request is comprised of one or more search term elements (*e.g.*, the search term elements "football," "exercise" and "manual").



*See e.g.,* https://www.google.com; *id.* (*see, e.g.,* GET command, payloads, responses, and

duration and timing of responses available in developer tools); *see also* Example Developer Tool

Images.

> ### Introducing the three stages of Google Search
>
> Google Search works in three stages, and not all pages make it through each stage:
>
> 1. **Crawling:** Google downloads text, images, and videos from pages it found on the internet with automated programs called crawlers.
> 2. **Indexing:** Google analyzes the text, images, and video files on the page, and stores the information in the Google index, which is a large database.
> 3. **Serving search results:** When a user searches on Google, Google returns information that's relevant to the user's query.

*See e.g.*, https://developers.google.com/search/docs/fundamentals/how-search-works.



*See e.g.*, https://www.google.com/chrome/browser-features/.

# About Google Data Centers

Google owns and operates data centers all over the world, helping to keep the internet humming 24/7. Learn how our relentless focus on innovation has made our data centers some of the most high-performing, secure, reliable, and efficient data centers in the world.

*See e.g.*, https://www.google.com/about/datacenters/.

346.    One or more components of the Google Search Engine Functionality employed and provided a method in an Internet search system for displaying search results during an Internet search process, the search results being generated based on user-specified search term elements, where at least one search result references a webpage (*e.g.*, the webpage accessible at https://tacklebar.com) that is missing at least one search term element, (*e.g.*, the search term element "exercise") for providing an interactive graphical user interface for the user to readily discern such search result without opening its referenced webpage comprising generating a plurality of search results based at least in part on the submitted first search request.



*See e.g.,* https://www.google.com; *id.* (*see, e.g.,* GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

347.    One or more components of the Google Search Engine Functionality employed and provided a method in an Internet search system for displaying search results during an Internet search process, the search results being generated based on user-specified search term elements, where at least one search result references a webpage that is missing at least one search term element, for providing an interactive graphical user interface for the user to readily discern such search result without opening its referenced webpage comprising generating a plurality of

search results based at least in part on the submitted first search request, wherein the plurality of search results is comprised of a first type of search result which references a first webpage (*e.g.*, the webpage accessible at https://shop.jtsstrength.com) that contains all submitted search term elements.



*See e.g.*, https://www.google.com; *id.* (*see*, *e.g.*, GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

348.    One or more components of the Google Search Engine Functionality employed and provided a method in an Internet search system for displaying search results during an

Internet search process, the search results being generated based on user-specified search term elements, where at least one search result references a webpage that is missing at least one search term element, for providing an interactive graphical user interface for the user to readily discern such search result without opening its referenced webpage comprising generating a plurality of search results based at least in part on the submitted first search request, wherein the plurality of search results is comprised of a second type of search result which references a second webpage (*e.g.*, the webpage accessible at https://tacklebar.com) that is missing at least one submitted search term element.



*See e.g.*, https://www.google.com; *id.* (*see*, *e.g.*, GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

349. One or more components of the Google Search Engine Functionality employed and provided a method in an Internet search system for displaying search results during an Internet search process, the search results being generated based on user-specified search term elements, where at least one search result references a webpage that is missing at least one search term element, for providing an interactive graphical user interface for the user to readily discern

such search result without opening its referenced webpage comprising causing the display screen to display the first and second types of search results on a search results webpage.



*See e.g.*, https://www.google.com; *id.* (*see*, *e.g.*, GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

350.    One or more components of the Google Search Engine Functionality employed and provided a method in an Internet search system for displaying search results during an Internet search process, the search results being generated based on user-specified search term elements, where at least one search result references a webpage that is missing at least one search

term element, for providing an interactive graphical user interface for the user to readily discern such search result without opening its referenced webpage comprising causing the display screen to display the first type of search result as a first search result grouping, wherein the first search result grouping is comprised of one or more of: a title for the first webpage, an Internet link for the first webpage, an excerpt of the first webpage, or a URL for the first webpage, and wherein the first search result grouping does not include any annotation for missing search term elements.



*See e.g.*, https://www.google.com; *id.* (*see*, *e.g.*, GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

351.    One or more components of the Google Search Engine Functionality employed and provided a method in an Internet search system for displaying search results during an Internet search process, the search results being generated based on user-specified search term elements, where at least one search result references a webpage that is missing at least one search term element, for providing an interactive graphical user interface for the user to readily discern such search result without opening its referenced webpage comprising causing the display screen to display the second type of search result as a second search result grouping, wherein the second search result grouping is comprised of an annotation showing the at least one search term element missing in the second webpage and one or more of: a title for the second webpage, an Internet link for the second webpage, an excerpt of the second webpage, or a URL for the second webpage, and wherein the annotation is comprised of a text representing the at least one search term element (*e.g.*, the search term element "exercise").



*See e.g.*, https://www.google.com; *id.* (*see*, *e.g.*, GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

352.    One or more components of the Google Search Engine Functionality employed and provided a method in an Internet search system for displaying search results during an Internet search process, the search results being generated based on user-specified search term elements, where at least one search result references a webpage that is missing at least one search term element, for providing an interactive graphical user interface for the user to readily discern such search result without opening its referenced webpage wherein the annotation enables the

user to readily discern, without opening the second webpage and navigating away from the search results webpage, that the second webpage is missing the at least one search term element, and by not opening the second webpage a faster execution is enabled for the Internet search process.



*See e.g.*, https://www.google.com; *id.* (*see*, *e.g.*, GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

353.    Defendant directly infringed and infringes at least claim 1 of the '184 patent in violation of 35 U.S.C. § 271(a) by its previous and ongoing making, selling, selling access to,

importing, offering for sale, and/or offering to sell access to the Google Search Engine Products

and Services and Google Search Engine Functionality.

354.    Defendant's infringement has damaged and continues to damage AccuSearch and

has caused and continues to cause it to suffer irreparable harm and damages.

### COUNT IV – Infringement of the '937 patent

355.    AccuSearch repeats, realleges, and incorporates by reference, as if fully set

forth here, the allegations of the preceding paragraphs above.

356.    Defendant (or those acting on its behalf) (i) made, makes, used, uses, sold, sells,

imported, imports, offered to sell, and/or offers to sell the Google Search Engine Products and

Services; and (ii) made, makes, used, uses, sold, sells, imported, imports, offered to sell access

to, and/or offers to sell access to the Google Search Engine Functionality that infringed and

infringes (literally and/or under the doctrine of equivalents) at least claim 15 of the '937 patent.

357.    Google provides a system for providing an enhanced interactive graphical Internet

search user interface for an Internet search process combining Internet search, annotation, and

filtering that enables a search engine user to request an Internet search and automatically remove

one or more search results that each reference a webpage that does not contain a desired search

term element, enabling a faster operation of Internet search for the search engine user by

enabling the search engine user to avoid spending time visiting a webpage that is missing the

desired search term element (*e.g.*, "exercise").



*See e.g.*, https://www.google.com. *See also*

https://developers.google.com/search/docs/appearance/visual-elements-gallery.

*See e.g.*, https://developers.google.com/search/docs/fundamentals/how-search-works.



*See e.g.*, https://www.google.com/chrome/browser-features/.

## About Google Data Centers

Google owns and operates data centers all over the world, helping to keep the internet humming 24/7. Learn how our relentless focus on innovation has made our data centers some of the most high-performing, secure, reliable, and efficient data centers in the world.

*See e.g.*, https://www.google.com/about/datacenters/.

358.    Google provides a system in which one or more servers for operating a search engine and for providing an Internet search user interface to a search engine user for operation on a personal computing device having a display screen (*e.g.*, a PC, mobile phone, or tablet device).



*See e.g.,* https://www.google.com; *see also*

https://developers.google.com/search/docs/appearance/visual-elements-gallery.



*See e.g.*, https://developers.google.com/search/docs/fundamentals/how-search-works.



*See e.g.*, https://www.google.com/chrome/browser-features/.

# About Google Data Centers

Google owns and operates data centers all over the world, helping to keep the internet humming 24/7. Learn how our relentless focus on innovation has made our data centers some of the most high-performing, secure, reliable, and efficient data centers in the world.

*See e.g.*, https://www.google.com/about/datacenters/; *id*. (*see, e.g.,* GET command, payloads, responses, and duration and timing of responses available in developer tools); *see also* Example Developer Tool Images.

359.    Google provides a system in which one or more servers receive a search request from the search engine user via the personal computing device (*e.g.*, a PC, mobile phone, or tablet device), the search request comprising one or more search term elements (*e.g.*, "football," "exercise," and "manual").



*See e.g.,* https://www.google.com; *see also;*

https://developers.google.com/search/docs/appearance/visual-elements-gallery;

https://developers.google.com/search/docs/fundamentals/how-search-works;

https://www.google.com/chrome/browser-features/; https://www.google.com/about/datacenters/;

Example Developer Tool Images.

360.    Google provides a system in which the one or more servers generate, by operating the search engine in response to receiving the search request, a first Internet search result that references a first webpage that is missing a first search term element (*e.g.*, "exercise") and a second Internet search result that references a second webpage (*e.g.*, a search result that

references a second webpage <u>without</u> indicating "Missing: [missing search term element],"

"Show results with: [missing search term element]," or a similar variant thereof; here, the

webpage accessible at https://shop.jtsstrength.com).



*See e.g.,* https://www.google.com; *see also*

https://developers.google.com/search/docs/appearance/visual-elements-gallery;

https://developers.google.com/search/docs/fundamentals/how-search-works;

https://www.google.com/chrome/browser-features/; https://www.google.com/about/datacenters/;

Example Developer Tool Images.

361.    Google provides a system in which the one or more servers generate and provide, for display on the personal computing device (*e.g.*, a PC, mobile phone, or tablet device), the Internet search user interface.



*See e.g.,* https://www.google.com; *see also*

https://developers.google.com/search/docs/appearance/visual-elements-gallery; Example

Developer Tool Images.

## About Google Data Centers

Google owns and operates data centers all over the world, helping to keep the internet humming 24/7. Learn how our relentless focus on innovation has made our data centers some of the most high-performing, secure, reliable, and efficient data centers in the world.

*See* https://www.google.com/about/datacenters/;

## Introducing the three stages of Google Search

Google Search works in three stages, and not all pages make it through each stage:

1. **Crawling:** Google downloads text, images, and videos from pages it found on the internet with automated programs called crawlers.

2. **Indexing:** Google analyzes the text, images, and video files on the page, and stores the information in the Google index, which is a large database.

3. **Serving search results:** When a user searches on Google, Google returns information that's relevant to the user's query.

*See* https://developers.google.com/search/docs/fundamentals/how-search-works.

362.    Google provides a system in which the Internet search user interface comprises the first Internet search result and a first warning to the search engine user that the first webpage is missing the first search term element (*e.g.*, "Missing: [missing search term element]," "Show results with: [missing search term element]," or a similar variant thereof), wherein the first warning comprises a text representing the first search term element (*e.g.*, "exercise").



*See e.g.*, https://www.google.com; *see also*

https://developers.google.com/search/docs/appearance/visual-elements-gallery; Example

Developer Tool Images.

363.    Google provides a system in which the first Internet search result is organized for

display as a first search result grouping comprising a first excerpt for the first webpage (*e.g.*, a

title of a referenced webpage and a selection of text from it), a first Internet link for the first

webpage (*e.g.*, a hyperlink upon which a user can click directed to the webpage), and the first

warning (*e.g.*, "Missing: [missing search term element]," "Show results with: [missing search

term element]," or a similar variant thereof).



*See e.g.*, https://www.google.com; *see also*

https://developers.google.com/search/docs/appearance/visual-elements-gallery; Example

Developer Tool Images.

364.    Google provides a system in which the Internet search user interface further

comprises the second Internet search result (*e.g.*, as shown above), wherein the second Internet

search result is organized for display as a second search result grouping that comprises a second

excerpt from the second webpage and a second Internet link for the second webpage but does not

comprise any warning that any of the one or more search term elements is missing from the

second webpage (*e.g.*, a search result that references a webpage <u>without</u> indicating "Missing:

[missing search term element]," "Show results with: [missing search term element]," or a similar variant thereof; here, the webpage accessible at https://shop.jtsstrength.com)).



*See e.g.,* https://www.google.com; *see also*

https://developers.google.com/search/docs/appearance/visual-elements-gallery; Example

Developer Tool Images.

     365.    Google provides a system in which the first and second search result groupings are each a unique search result grouping displayed separately from each other.



*See e.g.*, https://www.google.com; *see also*

https://developers.google.com/search/docs/appearance/visual-elements-gallery; Example

Developer Tool Images.

366.    Google provides a system in which the Internet search user interface provides a

filtering option (*e.g.*, a hyperlink or other option associated with the terms "Missing: [missing

search term element]," "Show results with: [missing search term element]," or similar variant

thereof"), wherein the search engine user's selection of the filtering option (*e.g.*, below by

clicking the "exercise" hyperlink following "Show results with:") causes an updated Internet

search user interface to be generated and provided, by the one or more servers, for display on the personal computing device.



*See* www.google.com (image on left obtained before user clicks first hyperlink following "Show results with:" labeled "exercise"; image on right obtained after a user clicks the hyperlink following "Show results with:" labeled "exercise"); *see also* https://www.google.com/intl/en/search/howsearchworks/our-approach/ads-on-search/; https://developers.google.com/search/docs/appearance/visual-elements-gallery; Example Developer Tool Images.

367.    Google provides a system in which the updated Internet search user interface does not display the first Internet search result (*e.g.*, no longer showing search results that previously included the warning).



*See* www.google.com (image on left obtained before user clicks first hyperlink following "Show results with:" labeled "exercise"; image on right obtained after a user clicks the hyperlink following "Show results with:" labeled "exercise"); *see also* https://developers.google.com/search/docs/appearance/visual-elements-gallery; Example Developer Tool Images.

368.    Defendant directly infringed and infringes at least claim 15 of the '937 patent in violation of 35 U.S.C. § 271(a) by its previous and ongoing making, selling, selling access to, importing, offering for sale, and/or offering to sell access to the Google Search Engine Products and Services and Google Search Engine Functionality.

369.    Defendant's infringement has damaged and continues to damage AccuSearch and has caused and continues to cause it to suffer irreparable harm and damages.

## **JURY DEMANDED**

Pursuant to the Federal Rule of Civil Procedure 38(b), AccuSearch hereby requests a trial by jury on all issues so triable.

## <u>PRAYER FOR RELIEF</u>

AccuSearch respectfully requests this Court to enter Judgment in AccuSearch's favor and against Google as follows:

a. finding that Google has infringed one or more claims of the '959 patent under 35 U.S.C. § 271(a);

b. finding that Google has infringed one or more claims of the '001 patent under 35 U.S.C. § 271(a);

c. finding that Google has infringed one or more claims of the '184 patent under 35 U.S.C. § 271(a);

d. finding that Google has infringed one or more claims of the '937 patent under 35 U.S.C. § 271(a);

e. awarding AccuSearch damages under 35 U.S.C. § 284, or otherwise permitted by law, including enhanced damages and/or supplemental damages for any continued post-verdict infringement;

f. awarding AccuSearch pre-judgment and post-judgment interest on the damages award and costs;

g. awarding costs of this action (including all disbursements) and attorney fees pursuant to 35 U.S.C. § 285, or as otherwise permitted by the law; and

h. awarding such other costs and further relief that the Court determines to be just and equitable.

*Of Counsel:*

Ronald M. Daignault (*pro hac vice* to be filed)
Chandran B. Iyer (*pro hac vice* to be filed)
Oded Burger (*pro hac vice* to be filed)
Steve Reynolds (*pro hac vice* to be filed)
Lisa Phillips (*pro hac vice* to be filed)
DAIGNAULT IYER LLP
8229 Boone Boulevard, Suite 450
Vienna, VA 22182
(908) 723-0981
rdaignault@daignaultiyer.com
cbiyer@daignaultiyer.com
oburger@daignaultiyer.com
sreynolds@daignaultiyer.com
lphillips@daignaultiyer.com

Dated: April 29, 2025

ASHBY & GEDDES

*/s/ Brian A. Biggs*

_____
Andrew C. Mayo (#5207)
Brian A. Biggs (#5591)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
amayo@ashbygeddes.com
bbiggs@ashbygeddes.com

*Attorneys for Plaintiff*
*AccuSearch Technologies LLC.*